J. L. McCAULL, R. A. Dinsmore, S. J. McCaull, and A. M. Dinsmore, Copartners as the Hawkeye Elevator Company, v. JAKE NICHOLS and Frank Kaiser, Partners as Nichols & Kaiser, and the Flasher State Bank.

(150 N. W. 932.)

**Agent — authority — mechanic's lien — withholding from record — mortgage — evidence.**

1. Evidence examined, and *held*, that plaintiff's agent had the authority to withhold from record the mechanic's lien until the ninety-day period had expired, thus allowing the mortgage to become a first lien. The evidence discloses that this is what was done.

**Estoppel — agent — acts of — benefits received — bank intervening — restoring to former position.**

2. Under the evidence, it is held that the plaintiffs are estopped to take advantage of the conduct of their agent whereby they received material benefit and the intervening bank was materially injured by such conduct, unless plaintiffs are in a position to restore the bank to as favorable a position as it occupied at the beginning of the transaction.

Opinion filed January 18, 1915.

Appeal from the District Court of Morton County, *Nuchols, J.* Affirmed.

*Niles & Koffel,* for appellants.

Defendant bank's mortgage, made within the ninety-day period, did not take priority over plaintiff's mechanic's lien for materials furnished before the expiration of the ninety days. Rev. Codes 1905, §§ 6240, 6242; Bastien v. Barras, 10 N. D. 29, 84 N. W. 559; Turner v. St. John, 8 N. D. 245, 78 N. W. 340; Haxton Steam Heater Co. v. Gordon, 2 N. D. 246, 33 Am. St. Rep. 776, 50 N. W. 708; Bender-Moss on Mechanic's Lien, p. 458, and notes; Bohn Mfg. Co. v. Kountze, 12 L.R.A. 33, note.

The withholding from record of plaintiff's claim for lien, by inducements offered plaintiff's local agent by the cashier of the defendant bank, and by the acts of such cashier in delaying filing plaintiff's lien, constituted fraud on the plaintiff. The filing of its mortgage prior to

plaintiff's lien was also a fraud on plaintiff, or at least gross negligence on the part of the cashier, who had assumed to have the lien filed. Therefore the bank is estopped to deny priority of plaintiff's lien. Peabody v. Lloyds Bankers, 6 N. D. 27, and note page 35, 68 N. W. 92; Stevens v. Ludlom, 24 Am. St. Rep. 210, and note, 46 Minn. 160, 24 Am. St. Rep. 210, 48 N. W. 771; 7 Am. & Eng. Enc. Law, 17–20; Markham v. O'Connor, 52 Ga. 183, 21 Am. Rep. 249; Hennessy v. Griggs, 1 N. D. 53, 44 N. W. 1010; O'Hara v. Park River, 1 N. D. 279, 47 N. W. 380; Brown v. First Nat. Bank, 137 Ind. 655, 24 L.R.A. 206, 37 N. E. 158; Kray v. Muggli, 77 Minn. 231, 45 L.R.A. 219, 79 N. W. 964, 1026, 1064; Continental Nat. Bank v. National Bank, 50 N. Y. 575; McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281; Gjerstadengen v. Hartzell, 9 N. D. 276, 81 Am. St. Rep. 575, 83 N. W. 230; Rev. Codes, § 5772, and authorities cited; Union Mut. L. Ins. Co. v. Slee, 110 Ill. 35; 31 Cyc. 1379, and cases cited; 1 Am. & Eng. Enc. Law, 2d ed. 1003, and cases cited.

The defendant bank knew or could have known, and it was its duty to know, the extent of the authority of plaintiff's agent. 1 Am. & Eng. Enc. Law, 2d ed. 996, 998, and cases cited; 1 Am. & Eng. Enc. Law, 350, and notes 2, 354, and cases cited; 31 Cyc. 1322, 1323, 1326, 1330, and cases cited.

When an agent is authorized to sell and collect, he must receive payment in cash. No other mode is permitted. 1 Am. & Eng. Enc. Law, 356, 357, and note 1; 31 Cyc. 1379, 1390, 1391, and cases cited; 1 Am. & Eng. Enc. Law, 2d ed. 108, 1002, 1003, 1014–1018, 1027, and cases cited; Van Vechten v. Smith, 59 Iowa, 173, 13 N. W. 94; Kountz v. Gates, 78 Wis. 415, 47 N. W. 729; Ludwig v. Gorsuch, 154 Pa. 413, 26 Atl. 434; Foster v. Paine, 56 Iowa, 622, 10 N. W. 214.

Neither can he bind his principal by a composition or release of the claim. 1 Am. & Eng. Enc. Law, 2d ed. 1028, and cases cited; Melvin v. Lamar Ins. Co. 80 Ill. 446, 22 Am. Rep. 199; 31 Cyc. 1393, and note 44.

Authority to do acts beyond the needs of the principal's business is not inferred from the use of general terms of the broadest import. 31 Cyc. 1386; Thiel Detective Service Co. v. McClure, 4 L.R.A.(N.S.) 843, and case note, 74 C. C. A. 122, 142 Fed. 952; Wheeler v. McGuire, 2 L.R.A. 808, and case note, 86 Ala. 398, 5 So. 190; Fifth Nat.

Bank v. Ashworth, 2 L.R.A. 491, and case note, 123 Pa. 212, 16 Atl. 596; Wm. Deering & Co. v. Russell, 5 N. D. 319, 65 N. W. 691; Reeves v. Corrigan, 3 N. D. 415, 57 N. W. 80.

*Hauley & Sullivan,* for respondents.

The findings of the lower court will be presumed to be correct in the absence of a showing to the contrary. There is no such showing in this case. Brady v. Kreuger, 8 S. D. 464, 59 Am. St. Rep. 771, 66 N. W. 1083; Gress v. Evans, 1 Dak. 387, 46 N. W. 1132; Myers v. Mitchell, 1 S. D. 249, 46 N. W. 245; Merrill v. Luce, 6 S. D. 354, 55 Am. St. Rep. 844, 61 N. W. 43; Searles v. Knapp, 5 S. D. 325, 49 Am. St. Rep. 873, 58 N. W. 807; Garr, S. & Co. v. Spaulding, 2 N. D. 414, 51 N. W. 867; Gould v. Duluth & D. Elevator Co. 3 N. D. 104, 54 N. W. 316; Crouch v. Dakota, W. & M. R. Co. 18 S. D. 540, 101 N. W. 722.

The plaintiff did an act with the intention of influencing the conduct of defendant, and under reason to believe that the statements made would influence the defendant; and since defendant was influenced by and acted upon such statements, a perfect example of estoppel exists. Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711; Eickelberg v. Soper, 1 S. D. 568, 47 N. W. 953.

The fact of agency and the extent of authority cannot be proved by the agent's declarations. Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924.

Again, by accepting the benefits of the argument made by McCall, the plaintiff ratified the act of its agent. Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; Russell v. Waterloo Threshing Mach. Co. 17 N. D. 248, 116 N. W. 611; Anderson v. First Nat. Bank, 4 N. D. 182, 59 N. W. 1029; Rev. Codes 1905, §§ 5763–5766.

BURKE, J. This is a trial *de novo*. While there are disputes in this case, we have no hesitancy in stating that the facts are clear to us. Not having the space to set out the evidence in full, we will content ourselves with stating that in our opinion the following narration is supported by the evidence and appeals to us as the most reasonable construction to be placed upon all of the evidence.

During the fall of 1909 the defendant Kaiser, together with one Nichols, bought a lot in the village of Flasher upon contract from the

W. H. Brown Land Company and began the erection of a building thereon, procuring lumber upon credit from the plaintiff, copartnership, which we shall hereafter refer to as the Hawkeye Elevator Company, the last purchase of lumber being on November 11, 1909.

Thereafter, and on or about the 24th of January, 1910, Kaiser purchased the interest of Nichols in the contract for the lot, and upon paying the balance of the purchase price, obtained the deed to the same. At or about the same time, he negotiated for a loan with the Flasher State Bank, through one Grace, its cashier. During all of these times, one McCall was the local agent of the plaintiff and Hawkeye Elevator Company, and as such had sold the lumber to the defendant and Nichols. Shortly before the 24th of January, 1910, Kaiser and McCall approached Grace with the purpose of having the bank take a mortgage upon the building and lot in a sum sufficient to pay the balance due upon the lumber bill, which was the sum of $800.

In this connection, Mr. Grace testified:

I can't remember whether they came together or whether they came separately, but Kaiser and he were both in and solicited the loan before it was made.

Q. Is that all you remember about it?

A. Furthermore, we were to have the first lien on the property. We were to have the mortgage, and our mortgage was to be the first lien.

. . .

Q. And were to loan them $800—and what was to be done with the $800?

A. To pay the Hawkeye Elevator Company.

. . .

Q. You were not to get clear title to the property until they were paid off?

A. If they did not turn over the property, that was not our business. That is what we loaned it to them for.

. . .

Q. Did you obligate yourself in any way to attend to the distribution of the money?

A. I did not.

. . .

Q. Did he offer you any inducements, as cashier of the bank, to induce you to make this loan to Frank Kaiser?

A. We were to have the first lien on the property.

Q. Was that his offer to you?

A. Yes.

. . .

Q. Then it was the statement made by the Hawkeye Elevator Company through their agent, Frank McCall, that induced you to make this loan to Frank Kaiser?

A. Yes.

Q. Did you rely upon the representations that were made to you by Mr. McCall?

A. I did.

Upon this same question, McCall testifies in part:

Q. That was the arrangement and understanding on the day the papers were made out?

A. Yes, sir, we were to get our $800 and they were to get the first lien.

Q. That was on the 24th day of January. The arrangement between you and Mr. Kaiser and the bank was this,—that the bank should make the loan of $800 to Mr. Kaiser,—that if they would make the loan of $800 to Mr. Kaiser, their mortgage would be the first lien, and you were to have the $800 that Mr. Kaiser was to get?

A. Yes.

And again he testifies:

Q. You wanted Mr. Grace to make the loan so your company would get its money?

A. Yes, sir, we did.

Q. You were anxious to get the matter straightened up?

A. Yes.

. . .

Q. You were willing to have Mr. Grace make this loan for $800, and you told him that if he would make the loan for $800, that you would let his mortgage be the first lien when you got your money, and, of course, it would be?

A. Yes, it would be because we would have nothing against the property.

Q. That was the arrangement and understanding on the day the papers were made out?

A. Yes, we were to get our $800 and they were to get the first lien.

Without setting forth more of the testimony, we will say that we are satisfied that at that time the arrangement was that Kaiser was to pay to McCall the proceeds of the loan; everybody had confidence in Kaiser and did not attend to the business as promptly as they otherwise might have done, and owing to the fact that Flasher is not a county seat, none of the papers were then filed. We also find that on the same day, the 24th of January, 1910, the bank paid to Kaiser the full amount of his loan by crediting it to him upon the books of the bank, and that McCall knew of this transaction and assumed the burden of collecting the money from Kaiser, for either upon the same afternoon or upon the following forenoon, McCall had further conversation with Kaiser outside of the bank, and without the knowledge of the bank, whereby he extended further accommodations to Kaiser, the exact nature of which is not clear to us, owing to the fact that Kaiser was not a witness. However, it appears that Kaiser wished to go to Iowa to be married, and, needing some money for that purpose, induced McCall to accept a check for $450 upon the bank, and a note for the balance, $350, due in one year, running to the Hawkeye Elevator Company. Regarding this transaction, McCall testifies that Kaiser promised to pay the same after he returned from his wedding trip, which is, of course, inconsistent with the fact that the note ran for one year.

McCall testifies upon cross-examination:

Q. Mr. Grace never told you that he had to hold the money until the papers were accepted?

A. No, it was just an assumption I had.

. . .

Q. Now, it was the same afternoon or the next day that he gave you this check?

A. I think it was the next morning. Some time the day after or the next day.

Q. And he gave you then a check for how much?

A. $450.

Q. On this account in the bank?

A. Yes, to apply to our account.

Q. He gave you a check of this $800 he got from the bank?

A. Yes.

Q. And he gave you a check for $450 of it?

A. Yes.

Q. And you arranged with him at that time that the balance of the $350 you would take a note for?

A. Yes.

. . .

Q. And your arrangement with him was—he was at that time going away to get married, and when he got back he would give you a check for the balance?

A. Yes.

Q. In the meantime you accepted his note as satisfactory?

A. I accepted his note as satisfactory at that time, and told him that in case he did not pay it, I would have to file a lien for the balance.

It does not appear that the bank had any knowledge of the extension of this further credit to Mr. Kaiser.

The ninety days, within which the lien might be filed, expired about the 9th of February, 1910, and at that time no lien had been filed. The bank recorded their mortgage on the 18th of February, 1910. Later, on the same day, the lien was filed with the clerk of court. Thus, the mortgage, under our recording act, would be prior to the mechanic's lien, if it were not for the circumstance claimed by appellant to control; to wit, that the $800 was paid to Kaiser about two weeks before the time for the filing of a mechanic's lien had expired. We do not need to rest our decision upon this proposition, however, as we are satisfied that the priority of the mortgage rests upon at least two other grounds upon which the law is absolutely clear.

(1) One of those is that McCall was the ostensible agent of the plaintiff as defined by §§ 6338–6340, Comp. Laws 1913. It is immaterial whether he had authority to satisfy a lien or to waive a lien, but he certainly had authority to withhold the lien from the files until

after the ninety-day period had expired, thus allowing the mortgage by agreement to become a first lien. That he did this in pursuance of an agreement with the bank is a conclusion that is irresistibly forced upon us by all the circumstances of this case.

(2) The second ground is that the plaintiffs are estopped to take advantage of the conduct of their agent even if unauthorized, which resulted in the payment by the bank of $800 to Kaiser upon the representations of their agent that the money would be used to pay the lien, thus making the mortgage the first encumbrance. Having received the benefits of the conduct of their agent, it would be inequitable to allow them to repudiate the deal, unless they were prepared to place the bank in as favorable a position as it was at the beginning. Eickelberg v. Soper, 1 S. D. 563, 47 N. W. 953.

For those reasons, we affirm the findings of the trial court in all particulars and adopt his conclusions of law to the effect that the mortgage was a prior encumbrance upon the premises.