[Sac. No. 840.   Department Two.—May 20, 1902.]

## MAURICE P. HAYES, Appellant, v. EMERY E. KIRKWOOD, Respondent.

ELECTION PRECINCT POLLING-PLACE — STORE — STOREHOUSE. — Where a precinct polling-place was appointed at the store of a person named, and the election for the precinct was held in a storehouse kept by the same person on the same premises, in which his merchandise was stored, and was sometimes sold and delivered by him, and in which previous elections had been held without objection, and no voter visiting the store could be or was mislead as to the polling-place, or expected to vote elsewhere than at such storehouse, an objection, upon an election contest, that there was a failure to hold the election for this precinct at a proper place, and that the vote was thereby invalidated, was properly overruled.

ID.—PARTITION IN STOREROOM—DOOR—VIEW OF BOOTHS.—Notwithstanding a partition in the storeroom where the election was held, separating the large room occupied by the election board and bystanders from a smaller room where the voting booths were placed, where there was a door in the partition, which was kept open, and immediately opened when temporarily or partly closed, through which every person in the large room could easily place himself in position to view the booths, the provision of section 1203 of the Political Code, that the booths shall not be hidden from the view of the bystanders, was not violated.

ID.—CLOSED WINDOWS IN BOOTH-ROOM.—The fact that there were two windows in the small room where the booths were placed, which appear to have been securely fastened, and are not shown to have caused any improper conduct, cannot invalidate the election.

ID.—VOTERS OCCUPYING SAME BOOTH.—Where two voters were discovered occupying the same booth, but upon being at once informed that it could not be permitted, they immediately occupied separate booths, such circumstance cannot vitiate the election.

ID.—IRREGULARITIES OF ELECTION BOARD.—Irregularities on the part of the election board and clerks in conducting the election which were so explained by members of the board and other witnesses as to show that no injurious result followed, and that none of them had any fraudulent design or affected in any way the result of the election, cannot have the effect to invalidate it or warrant the court in defeating the will of innocent voters.

ID.—ELECTION RETURNS—CRACKING OF SEALING-WAX—BALLOTS NOT TAMPERED WITH.—The fact that, upon the mailing of the election returns by a member of the board to whom they had been intrusted, in envelopes which had been each sealed with a little sealing-wax and tightly tied together, the sealing-wax was found to be cracked and broken, and the flaps, being still in the slits, were fastened by the postmaster with mucilage, and the envelopes addressed to the county clerk, cannot be cause for throwing out the vote of the precinct, where it affirmatively appears that the envelopes were not opened, and that the ballots were not tampered with, and were not objected to when counted upon the contest of the election.

APPEAL from a judgment of the Superior Court of Mono County. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

O. F. Hakes, and William O. Parker, for Appellant.

Richard S. Miner, and J. D. Murphy, for Respondent.

McFARLAND, J.—This is a contest for the office of sheriff of the county of Mono. Kirkwood was declared elected by

the board of supervisors, and Hayes instituted this action to have it adjudged that he, and not Kirkwood, was legally elected to said office. The superior court recounted all the votes, and found that Kirkwood had a majority, and rendered judgment accordingly. Hayes appeals from the judgment.

There is no question raised as to the marking of the ballots, or as to the legality of any ballot, provided the election at Antelope Precinct was legally held; but appellant contends that, for reasons hereinafter mentioned, all the votes at said precinct should be rejected, no matter for whom given or counted, and that the case should be decided as if no election had been held at that precinct. If that contention can be maintained, appellant should be declared elected; for he had a majority of all the other votes polled in the county.

The main contention of appellant is, that the election in Antelope Precinct was not held at the proper place. The order of the board of supervisors was, that the election in that precinct should be held at "Todkill's Store." It appears from the evidence, and was found by the court, that a man named Todkill kept a store in said precinct at the place where the election was held; that on the lot on which he carried on his business he had two buildings, one of which was the main store, and the other a building which he used as part of his trading premises. The latter building was used mainly as a storehouse, but goods were also sometimes sold and delivered there. In the latter building the election was held. It was the same building in which the election had been held at the last two previous elections, and was the place which the election officers, and all the electors, understood to be the designated place. No one objected to it, and it is clear that no one was deceived or expected to vote elsewhere. Under these circumstances there was not a failure to hold the election at the proper place. In a populous and closely built-up city or large town, no doubt, the designation of a particular building or room in which an election is to be held would have to be quite strictly complied with; but in the country the designation of a well-known "store" not near any other houses—as was shown in the case at bar—would certainly include, as part of the "place," a building on the trading premises used in connection with the business. No one who went to the

"store" for the purpose of voting could possibly be deceived as to the place of voting; and no one was so deceived.

It is contended that the precinct should be thrown out because the voting booths were not in view of the election board and the bystanders. The facts are these: The election was held in a one-story building, but there was a partition across it. The space on one side of the partition was about fourteen feet in width, and on the other about nine feet. The election board and the bystanders were in the larger space, and the two Vandecar voting booths in the smaller. There was a door in the partition through which the booths could be seen from parts of the space where the board and bystanders were, but not from every part thereof. The door in the partition was kept open, except that upon two or three occasions it became temporarily closed, or partly closed, but was immediately opened again. Every one in the large room could easily put himself in a position to see the booths. The only provision of the statute touching the subject to which our attention has been called is found in section 1203 of the Political Code, which says that the arrangement shall be such that the booths "shall not be hidden from the view" of the bystanders. Under these circumstances we do not think that the provision of the law that the booths must not be hidden from view was violated. Neither do we think that the fact that there were two windows in the room where the booths were is sufficient to invalidate the election. The court found that they were securely fastened, and there is no evidence that they caused any improper conduct.

It appears that at one time two voters were discovered occupying the same booth, but they were at once informed that this could not be permitted, and they immediately occupied separate boths, and it is contended that this circumstance should invalidate the election. The contention is not maintainable; to hold otherwise would be to put it into the power of any designing and mischievous person, by simply thrusting himself for a moment into a booth occupied by another voter, to set aside all the votes at a precinct where the majority was known to be adverse to him or his party or his friend.

The other points of appellant merely go to irregularities in the election board in conducting the election, which were so explained by members of the board and others who were

sworn as witnesses in the case as to show that no injurious result followed. These points are mainly as follows: It is contended that the board, contrary to law, closed the polls for an hour at noon; but the court, on sufficient evidence, found that at noon some of the members of the board absented themselves from the polling-place for less than an hour to eat luncheon, and that the ballot-box and all the election papers were left at the polling-place in charge of other members; that there was no formal closing of the polls; and that during their absence no one asked to vote. It is contended, also, that at the closing in the evening the board left the polling-place and the ballot-box for an hour; but with respect to this contention the court found, on sufficient evidence, that the facts were the same as those which occurred at noon,—namely, that a part of the board absented themselves for a short time to eat dinner, leaving the ballot-box and the other election papers in charge of the other members of the board at the polling-place. It is also contended that the precinct should be thrown out, under section 1204 of the Political Code, because, in some instances, the election clerks failed to require some persons desiring to vote to give their names and addresses or to announce the same, and failed to state to the voter that he must mark his ballot with the stamp provided by law or it would not be counted, and because, in some instances, they failed to write on the register opposite the name of the voter the number of the general ticket given him, and because, in a few instances, the inspector neglected to announce the name of the voter or the number of his ticket, and the ballot-clerk neglected to repeat the name or number of the ballot, as provided by section 1205 of the Political Code, and because the clerks, upon the completion of the tallies, did not draw lines in ink or otherwise from the last tally-mark to the end of the line in which the tallies terminated, and the name of the person making the last tally was not written in the line, as required by section 1258. But the court found, upon sufficient evidence, that all the above irregularities were the result of ignorance or inadvertence, and not of any fraudulent design or for the purpose of doing any wrong; and it found affirmatively that the said irregularities did not in any way affect the result of said election. Under these circumstances, the above-mentioned acts and omissions are

clearly insufficient to warrant such a serious result as that claimed by appellant.

At the close of the counting, the ballots, the election returns, and the spoiled ballots were each inclosed in a separate heavy cloth-lined paper envelope, manufactured expressly for the purpose. Each envelope had a flap, or tongue, which was put into a slit, thus closing it. The board then fastened each envelope by dropping, in a crude way, a small amount of sealing-wax over the edge of each flap. One of the board then tied the three envelopes tightly together with a piece of rope, and they were given into the custody of one of the board, who took it to his home—it being then past midnight and the post-office being closed. He retained possession of the envelopes until the next morning, when he took them to the post-office. It was discovered that the sealing-wax on the envelopes had been cracked and broken—probably because they had been too tightly tied with the rope; but the flaps were still in the slits. The postmaster fastened the flaps with mucilage, and they were properly directed to the county clerk and forwarded to him by mail, and remained afterwards in the custody of said clerk. These last-named facts are relied on by appellant as a cause for throwing out the precinct. We do not think that such result follows. We think that it clearly and affirmatively appeared from the evidence that the envelopes were not opened, and that the contents were not in any way tampered with. Moreover, there was no objection made to the ballots contained in these envelopes when the court, in the case at bar, was engaged in recounting; the objection now made is upon the general ground of "misconduct" of the election officers.

Other points made by appellant are founded on issues of fact, which were, upon sufficient evidence, found against him by the court, and need not be further noticed.

During the trial appellant withdrew all charges of intentional or deliberate fraud. The court found, "that said election was fairly and honestly conducted, in substantial compliance with the requirements of the law; and that the testimony of the witnesses adduced at the trial is irreconcilable with the slightest suspicion of fraud or unfairness"; and the evidence clearly sustains this finding.

Of course, misconduct of election officers may be so gross

and unusual, and may open such manifold opportunities for fraud, that a court can at once see the practical impossibility of purging the polls and showing that no fraud or wrongful acts affecting the result did actually occur. Such was the case in *Tebbe* v. *Smith,* 108 Cal 101.[1] And, again, there may be irregularities which did not affect the result, and which might easily be explained, but which, in the absence of any explanation or attempt to purge the polls, would invalidate the election. Such was the case in *Russell* v. *McDowell,* 83 Cal. 70. But in the case at bar it sufficiently appears that nothing prejudicial to the rights of any one resulted from the irregularities and omissions complained of; and there is nothing to warrant the court in defeating the will of innocent voters. It must be remembered that neither the voters nor those voted for have any control over the officers of election; and to upset an election because such officers have failed to strictly comply with the law, where it appears that no harm was done thereby, would be to encourage irregularities committed for the very purpose of invalidating elections. Questions like these here involved must be decided in the light of section 1112 of the Code of Civil Procedure, which is as follows: "No irregular or improper conduct in the proceedings of the judges, or any of them, is such misconduct as avoids an election, unless the irregular or improper conduct is such as to procure the person whose right to the office is contested to be declared elected when he has not received the highest number of legal votes."

Our conclusion is, that the superior court rightly decided the case at bar in favor of respondent.

The judgment is affirmed.

Henshaw, J., and Temple, J., concurred.

---

[1] 49 Am. St. Rep. 68.