FULLERTON, Appellant, v. SMIZER, Respondent.

(213 N. W. 730.)

(File No. 6470.   Opinion filed May 5, 1927.)

1.  **Elections—Electioneering Near Polling Place Held Not to Invalidate Election.**

    Electioneering within 50 feet of polling place, which statute makes a misdemeanor, not being brought to attention of election officers, nor shown to have influenced a vote, cannot deprive electors of an entire precinct of their franchise.

2.  **Elections—Election Held Not Invalidated by Officers Not Being Sworn.**

    That election officers, who were duly appointed and who proceeded to hold the election, failed to be sworn as such officers, held not to have the effect of defeating the will of the voters as expressed by their legally prepared ballots.

3.  **Elections—Election Held Not Invalidated by Fact that Persons Outside Building Could Look into Booths.**

    That some election booths were so placed that persons outside the building, if seeking to do so, could see electors marking their ballots, is not such an irregularity as to justify throwing out the vote of the precinct; there being no evidence of a corrupt purpose or a corrupt use of the opportunity of observation.

4.  **Elections—Merely Allowing Outsider to Assist in Handling Ballots for Count Held Not to Justify Throwing Out of Vote.**

    That election officers allowed an outsider to assist in unfolding the ballots and in handling them for purpose of making a count sufficient to determine result as to certain candidates, having been in view of the officers and public, and there being no hint of fraud or corrupt purpose, held not such an irregularity as to justify courts in throwing out the vote of the precinct.

**5. Elections—Conduct of Election Statutes Are "Directory," Unless Otherwise Expressly Declared, or Unless Noncompliance Will Change or Render Doubtful the Result.**

Statutes giving directions as to conduct of elections will be construed as "directory," unless noncompliance therewith is expressly declared fatal or will change or render doubtful the result.

Note.—See, Headnote (1), American Key-Numbered Digest, Elections, Key-No. 231, 20 C. J. Sec. 210; (2) Elections, Key-No. 227(1), 20 C. J. Sec. 72; (3) Elections, Key-No. 227(1), 20 C. J. Sec. 222; (4) Elections, Key-No. 244, 20 C. J. Sec. 241; (5) Elections, Key-No. 198, 20 C. J. Sec. 223.

For procedure and forms in election contests, see Bancroft's Code Practice and Remedies, Vol. 4, pg. 3778.

Appeal from Circuit Court, Bennett County; Hon. John G. Bartine, Judge.

Election contest by A. L. Fullerton against George Smizer. Judgment for contestee, and contestant appeals. Affirmed.

*W. J. Hooper,* of Gregory, and *David F. Heffron,* of Sioux Falls, for Appellant.

*Helm & Lewis,* of Hot Springs, for Respondent.

MORIARTY, C. This is an appeal from the judgment of the trial court in an election contest. At the election held in November, 1926, the parties to this proceeding were candidates for the office of county auditor of Bennett county. After a canvass of the votes, the canvassing board issued a certificate of election to Smizer.

Fullerton instituted a contest proceeding, alleging numerous errors and irregularities in the conduct of the election and the canvass of the votes. The trial court received evidence as to alleged irregularities in the conduct of the election, and thereafter made a recount of the ballots. As a result of this proceeding the trial court made findings to the effect that there was no fraud, bribery, or misconduct practiced at the election, and that the ballots cast at said election showed that Smizer had received 371 valid and lawful votes for the office of auditor, and Fullerton had received 368 valid votes for said office, and judgment was entered accordingly.

On this appeal no question is raised as to the recount of the individual ballots. The only contention presented to this court is

21—Vol. 51, S. D.

that there were such irregularities in the conduct of the election in Allen precinct that the entire vote of said precinct should be thrown out as illegal. The throwing out of the vote of that precinct would result in giving Fullerton a plurality, entitling him to a certificate of his election.

The irregularities complained of are as follows: That the election officers failed to take the oath required by law before proceeding with the election; that some of the booths provided for the marking of their ballots by electors were so placed that the manner in which electors marked their ballots might be seen by persons outside the building in which the election was held; that certain persons believed to be engaged in electioneering were seen in private conversation with electors within 50 feet of the polling place; that after the ballot box had been emptied William Losey, one of the men alleged to have been engaged in electioneering, assisted the election officers in straightening out the ballots, and made a cursory count of the vote on congressman.

[1] The question of electioneering activities may be very briefly disposed of. There is no evidence whatever of any attempt at bribery or any corrupt act. There is no evidence that there was any electioneering talk. Mere private conversation with many voters by one suspected to electioneering is all that is proven. Nor is there any evidence that any act complained of was committed in the polling place, or in any way brought to the attention of the election officers.

The statutes of this state make electioneering in polling places, or within 50 feet thereof, a misdemeanor, and provide penalties therefor. But there is no provision that such acts should invalidate the election. It cannot be the intent of the law that activities of this kind, which are not brought to the attention of the election officers, and which are not shown to have influenced a single vote, can deprive the electors of an entire precinct of their franchise.

[2] As to the acts of the election officers: They were duly appointed to act as such officers, and they did proceed to conduct the election. They were de facto officers of the election, and their failure to be sworn as such officers should not be allowed to defeat the will of the voters expressed by their legally prepared ballots. McCrary on Elections (4th Ed.) § 251; Taylor v. Taylor, 10 Minn. 107 (Gil. 81); People v. Prewett, 124 Cal. 7, 56 P. 619;

Sanders v. Lacks, 142 Mo. 255, 43 S. W. 653; Fuerst v. Semmler, 29 N. D. 411, 149 N. W. 115; In re Krickbaum's Election, 221 Pa. 521, 70 A. 852.

[3] As to the placing of the election booths: The record shows that the polling place was in a building in which a country store and post office were located. The door was near the center of the south side of the building, and opened from a porch about 12 or 14 feet long. West of this door was a double window, and the open side of one or two of the booths was placed opposite this window, so that persons on the porch, and seeking to do so, could see electors engaged in marking their ballots. There is no evidence that any one was taking advantage of this opportunity for any corrupt purpose. It is quite possible that the booths were placed opposite the windows, in order that electors might have adequate light, or for other good reasons arising from the character of the building. In the absence of any evidence to indicate a corrupt purpose, or a corrupt use of the opportunity for observing the marking of their ballots by voters, the irregularity is not such as to justify the throwing out of the vote of the precinct.

[4] As to the act of the election officers in allowing Losey to assist in unfolding the ballots, and in handling them for the purpose of making a count sufficient to determine the result as to certain candidates, while such conduct is not to be commended, it appears that this handling of the ballots was in the view of the election officers and the public, and there is no hint of any fraud, or of any corrupt purpose, either on Losey's part or on that of the officers, the irregularity is not such as to justify the courts in throwing out the vote of the precinct.

[5] The rule to be applied in the consideration of all the questions presented on this appeal is tersely stated in 20 Corpus Juris at page 181, in the following language:

"Statutes giving directions as to conduct of elections will be construed by the courts as directory, unless noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result."

As supporting this rule cases from the courts of 14 states are cited by Corpus Juris. And the Supreme Court of Wisconsin has said: "The object of election laws is to secure the rights of duly qualified electors and not to defeat them." Dithmar v. Bunnell,

131 Wis. 198, 110 N. W. 177; State v. Anderson (Wis.), 211 N. W. 938.

This court has announced its adherence to that rule, and has cited with approval the decisions of several states in which the rule is followed. Tuntland v. Noble, 30 S. D. 145, 138 N. W. 291, Ann. Cas. 1915A, 1004; Olson v. City of Lemmon, 33 S. D. 380, 146 N. W. 592; Mueller v. Holter, 46 S. D. 535, 194 N. W. 844. See, also, McCrary on Elections (4th Ed.), sec. 251; Hayes v. Kirkwood, 136 Cal. 396, 69 P. 30; Perry v. Hackney, 11 N. D. 154, 90 N. W. 483; State ex rel v. Grimm (Neb.), 212 N. W. 437; Younker v. Susong, 173 Iowa 663, 156 N. W. 24.

The judgment appealed from is affirmed.

CAMPBELL, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.

GATES, J. I concur in the foregoing opinion, and am also of the view that the notice of contest did not allege facts sufficient to authorize the receipt of evidence as to the alleged irregularities in Allen precinct; much less did it authorize the trial court to order opened the ballot boxes of any precinct of the county. An election contest cannot be a fishing excursion. The notice of contest must allege facts, not legal conclusions. 20 C. J. 227; 9 R. C. L. 1167; note 12 L. R. A. 705; Rev. Code 1919, § 7336.