[Civ. No. 25687. First Dist., Div. Two. Jan. 19, 1970.]

EAST BAY MUNICIPAL EMPLOYEES UNION, LOCAL 390,
AFL-CIO et al., Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

## Counsel

Levy & Van Bourg, Levy, DeRoy, Geffner & Van Bourg, Victor J. Van Bourg and Stewart Weinberg for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and James E. Jefferis, Assistant County Counsel, for Defendants and Respondents.

## Opinion

**TAYLOR, J.**—This is an appeal by the East Bay Municipal Employees Union (hereafter union) and its officers, on behalf of certain named members[1] (hereafter collectively referred to as appellants), who are employees

[1] An organization that qualifies under sections 3500-3509 of the Government Code has standing to sue in its own name to enforce the employment rights of its members

of the County of Alameda (hereafter county), under the jurisdiction of the County Board of Supervisors, County Civil Service Commissioners, and Director of Personnel (hereafter collectively referred to as respondents). As the appeal is from a judgment pursuant to an order dated October 30, 1967, sustaining the demurrer of respondents to appellants' petition for a writ of mandate, seeking reinstatement of the named employees without discrimination or loss of benefits, the only question is whether the petition sets forth a cause of action.

The allegations of the union's petition, which must be accepted as true for purposes of this appeal, are as follows: Prior to December 31, 1966, the over 300 individuals on whose behalf this action was filed, were employed at several county hospitals in numerous classifications embraced by the rules and regulations of the county's civil service system. The union had appeared before various agents and representatives of respondents and participated in discussions and negotiations concerning wages and other problems affecting the conditions of employment, including work load, staffing, etc. After these discussions and negotiations failed to produce any alleviation of the problems, certain members, on due notice to respondents, refused to work and engaged in brief picketing and protest at certain hospitals and the offices of the county. The conduct of these employees was based on their rights under the Constitutions of the State of California and the United States, and the laws, rules and regulations governing public employment in this state to protest action by their employer and to temporarily withhold their services in support of such protest. None of the employees resigned from their positions of employment nor indicated that their action or protest was of a permanent nature or permanent severance or termination of their employment relationship with respondents.

From about December 31, 1966, until January 10, 1967, the union and respondents participated in numerous meetings and negotiations in order to end the protest and to alleviate the economic and working condition problems of the employees involved. At a meeting on January 10, 1967, respondents advised, agreed and represented to the union that if the employees returned to work, they would be returned to work without recrimination, without loss of any benefits or conditions previously earned by them, such as seniority, etc., and would not be discriminated against because of their participation in the protest. In reliance on these promises, the employees did, in fact, return to work on January 10, 1967.

On January 17, 1967, the board of supervisors adopted an emergency ordinance (of which we can take judicial notice pursuant to Evid. Code,

(*Professional Fire Fighters, Inc.* v. *City of Los Angeles*, 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158]).

§§ 451, 452) granting the wage raises requested as of January 1, and indicating its intent that the employees be reinstated without prejudice and in accordance with county civil service procedure. On January 18, 1967, the county's director of medical institutions issued a bulletin, set forth in the footnote below.[2]

Thereafter, respondents failed to comply with their promises not to discriminate against the employees in that they were not reemployed in the same positions and on the shifts to which they had been previously assigned; some of them were not reemployed for a number of weeks;[3] favoritism was shown toward temporary employees hired during the protest; and all of the employees were treated as if they had been terminated and, therefore, were reemployed as new and probationary employees, with a resultant loss of seniority, vacation and sick leave rights, retirement benefits and other conditions of employment.

Throughout the proceedings, respondents took the position that the protest of the union members was an unlawful act and that, therefore, there was no legal consideration for the purported agreement of January 10, 1967, and that the employees involved had been duly reinstated in accordance with the applicable rules and regulations of the county civil service. At the hearing on the petition, the trial court agreed with respondents on the basis of *City of Los Angeles* v. *Los Angeles etc. Council,* 94 Cal.App.2d 36 [210 P.2d 305], which held that government employees had no right to strike, and sustained the demurrer with leave to amend. As the court had so indicated the basis of its decision, the union did not attempt to amend the petition, and this appeal ensued.

Appellants contend that the trial court erred in failing to consider the Brown Act[4] (ch. 10, div. (h) of Gov. Code, §§ 3500-3509; Stats. 1961,

---

[2]"To: All Supervisors and Employees

"Subject: Return of employees since recent 'walkout'

"It is the policy of the Board of Supervisors, Alameda County Administration, and Medical Institutions that all employees returning following the recent 'walkout' through reinstatement or rescinsion [*sic*] be returned 'without prejudice' and by the Civil Service rules governing such procedures.

"To insure the best possible atmosphere while returning the hospital to normal operation and to insure that patients entrusted to our care receive the best and safest care possible, it is essential that all employees and supervisors work in harmony and without friction."

[3]Apparently, about 25 employees had not been called back to work at the time the petition in the instant case was filed. However, since appellants in their briefs characterize the issue of whether their petition states a cause of action for *reinstatement without prejudice,* we assume that there are no contentions concerning the reemployment of this group of employees.

[4]The statute as originally enacted in 1961 and herein applicable is known as the Brown Act. With the 1968 amendments, the statute was renamed the Meyers-Milias-Brown Act (Stats. 1968, ch. 1390, § 12.5).

ch. 1964), adopted after the case relied on by the trial court and the authorities cited by respondents.

■ The statute extended to employees of "the various public agencies in the State" (§ 3500) the right to form and join employee organizations that have as one of their primary purposes the representation of such employees in their relations with the public agency employer, and to be represented by such employee organizations, or to represent themselves individually (§§ 3501, 3502). The statute is designed to improve personnel management and to strengthen merit, civil service and other methods of administering employer-employee relations, but does not supersede provisions of existing state law or the charters, ordinances and rules of local public agencies establishing merit or civil service systems. "Public employee" means any person employed by any public agency except those persons elected by popular vote or appointed by the Governor (subd. (c), § 3501). Except for specific exclusions,[5] "public agency" means "the State of California, every governmental subdivision, every district, every public and quasi-public corporation, every public agency and public service corporation and every town, city, county, city and county, and municipal corporation," whether incorporated or chartered or not.[6] (Subd. (b), § 3501.)

Section 3503 establishes the right of employee organizations to represent "their members in their employment relations with public agencies"; section 3504 states that the scope of representation "shall include all matters relating to employment conditions and employer-employee relations, including but not limited to, wages, hours, and other terms and conditions of employment." Section 3505 provided, at the time here pertinent: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer with representatives of recognized employee organizations, and shall consider as fully as it deems reasonable such presentations as are made by the employee organization on behalf of its members *prior to arriving at* a determination of policy or course of action." (Italics added.)

For the protection of the employees in the exercise of the rights granted, the Legislature directed that: "Public agencies and employee organizations

---

[5]These exclusions, set forth in section 3508, relate to certain groups of public employees, such as peace officers (Pen. Code, § 817), and public school employees (Ed. Code, § 13080 et seq.) and firefighters (Lab. Code, § 1960 et seq.), which are covered by separate but similar statutes.

[6]Although no appellate court has specifically so held, the broad wording of the statute leaves little room for doubt, and the statute applies to all governmental agencies in the state, except agencies of the federal government in California (39 Ops.Cal. Atty.Gen. 182). In any event, respondents have not challenged the applicability of the statute to them and appellants.

shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502" (§ 3506).

The appellate courts have recognized that these provisions of the Government Code and the related provisions of the other statutes applicable to firefighters, school teachers, etc. affect a change in the law and public policy of this state (*International Assn. of Fire Fighters* v. *County of Merced,* 204 Cal.App.2d 387, 390 [22 Cal.Rptr. 270]).[7] Previously, California followed the old common law rule that both prevented public employees from joining and being represented by employee organizations (31 A.L.R.2d 1142). While the Legislature has specifically not imposed the duty to bargain collectively on public agencies,[8] it has been attempting to reconcile by selective innovation the divergent elements inherent in public employer-employee relations (*California Federation of Teachers* v. *Oxnard Elementary Schools,* 272 Cal.App.2d 514, 523 [77 Cal.Rptr. 497]).

We agree with appellants that to determine the question in the instant case, we need not decide the challenging question of whether the Brown Act does, in fact, grant public employees the right to strike. Accordingly, we do not dispose of the matter on the same basis as did the trial court.

In the instant case, it is alleged that respondents met with the union, pursuant to the above provisions, and worked out the terms of an agreement for a wage increase and the reinstatement of the individual employees involved, without prejudice, and in accordance with the applicable county civil service rules and regulations.[9]

---

[7] The passage of similar legislation in many jurisdictions and the commensurate dynamic growth of public employee organizations is one of most significant development of the last decade. (See Werne, *Collective Bargaining in the Public Sector,* 22 Vanderbilt L.Rev. 833; Willington & Winter, *The Limits of Collective Bargaining in Public Employment,* 78 Yale L.J. 1107.)

[8] This is accomplished by the specific exclusion from the Brown Act and its sister statutes of Labor Code section 923, which assures the right of collective bargaining to those employed by a private business not subject to the National Labor Relations Act.

[9] We may take judicial notice of these rules (Evid. Code, §§ 451, 452), which were appended to respondents' demurrer.

Rule 2424: "Failure to return at the expiration of a leave of absence or being absent without leave, shall be considered as an automatic resignation. Such a resignation may be rescinded by the Department Head if the employee presents satisfactory reasons for his absence within three days of the date his automatic resignation was effected."

As we noted above, although the Brown Act does not compel public agencies to bargain collectively, section 3505 specifically provides that the governing body of a public agency ". . . shall meet and confer . . ." with representatives of the public employee organization. The public agency is further directed to "consider fully as it deems reasonable" the representations made by employee organizations on behalf of its members "prior to arriving at a determination of policy or action." ■ Thus, the statute neither requires collective bargaining nor precisely defines the rights which flow to public employees and the nature and scope of the contract that can be entered into by the parties. The statute does, however, apparently envision that *agreements reached as the result of such conferences and meetings are now compatible with civil service and merit systems.* In 1968, section 3505 was amended to require the public agency to meet and confer "in good faith"[10] and reduce *its employment agreements to writing* (Stats. 1968, ch. 1390, § 6). Thus, at the time here pertinent, the statute required the public agency *to meet and confer and listen.* ■ In the instant case, as a result of such meetings, an agreement was reached to reinstate the employees without prejudice and in accordance with the county's civil service regulations. We think that under these circumstances, the modern view of statutory provisions similar to the Brown Act is that when a public employer engages in such meetings with the representatives of the public employee organization, any agreement that the public agency is authorized to make•and, in fact, does enter into, should be held valid and binding as to all parties (*International Brotherhood of Electrical Workers* v. *Town of Farmington* (1965) 75 N.M. 393 [405 P.2d 233]; *Local 266 etc. Workers* v. *Salt River Project Agr. Improv. & Power Dist.* (1954) 78 Ariz. 30 [275 P.2d 393]; *American Federation of State etc. Emp.* v. *City of Keene* (1967) 108 N.H. 68 [227 A.2d 602]).

Respondents here alleged that the reinstatement of the employees was in accordance with the county civil service system. To determine this question, we take judicial notice of the regulations adopted by the county pursuant to civil service rules quoted in footnote 9 above. These regulations, adopted May 29, 1958, provide that: reinstatement is to a definite job and not to a place on the list; does not have to be in the same position or to the same department in which the individual formerly worked but can

Rule 1744: "On the request of a Department Head and approval of the Commission, a regularly appointed employee who resigned in good standing may, within two years after the effective date of his resignation, be reinstated in a position in the class from which he resigned or in a position in' another class for which he may be eligible as determined by the Commission. Appointments by reinstatement following resignation are subject to the probationary period established for the class."

[10]This language has acquired some specific meaning through construction of a similar phrase in the National Labor Relations Act. It means at least that the employer is required to make counter-proposals.

be to the same class in some other department or an equivalent or lower class in the same series; the employee is deemed to have been on leave of absence without pay during the period preceding the reinstatement and accordingly, starts again at the same step in the pay schedule as he occupied when he left and retains his old anniversary date. Sick leave is on the basis of the total length of service to his credit. Vacations are handled as though the employee had nothing to his credit at the time he returns to county service and he is entitled to vacation credits just as though he were a new employee.

■ The allegations of appellants' petition here that certain employees were reinstated with the loss of anniversary dates, sick leave and retirement benefits, is in clear violation of the county's civil service regulations, the antidiscrimination clause of section 3506 of the Government Code, and the agreement reached by the parties on January 10. It follows that appellants have stated a cause of action against respondents.

Our conclusion is reached with full knowledge of *Social Workers Union Local 535* v. *County of Los Angeles,* 270 Cal.App.2d 65 [75 Cal.Rptr. 566], decided after the briefs of all the parties were filed. In the pertinent portion of that case, the trial court declared invalid the imposition of the loss of certain fringe benefits relating to salaries, sick leaves and vacations upon county employees who participated in a strike. The trial court had found that as part of the strike settlement, the couny superintendent of charities had agreed not to give new anniversary dates to those employees who were involved in the strike and to provide them with a retroactive unpaid leave of absence for the period of the strike. The superintendent further stated that the matter could be handled administratively and if not, by the necessary amendments of the salary ordinance. The trial court concluded that the county officials involved were estopped from doing otherwise and that, therefore, the county board of supervisors' subsequent act of denial of fringe benefits constituted a violation of the strike settlement made with the union.

On appeal, the trial court was reversed as the appellate court found that the findings did not support the trial court's conclusions. The appellate court pointed out (at p. 75) that the promise to attempt to get the board of supervisors to enact an ordinance that would protect the employees involved in the strike from suffering any loss of fringe benefits was not an affirmative unqualified promise that such loss would be prevented in any event, and was not the kind of promise that could either be specifically enforced or made the basis of a promissory estoppel. Under the civil service

rules in effect in Los Angeles County at the time, was one limiting the power of the county officials to grant unpaid leaves of absence for purposes such as illness, injury, military service, maternity, education or training, etc. Accordingly, the appellate court concluded that the officials' promise to help to protect the employees from such a loss of fringe benefits could not be enforced against the county or made the basis of a promissory estoppel.

Although the question determined in the Los Angeles Social Workers case also involved the denial of fringe benefits to certain county employees after a strike settlement, the factual and legal situations of the instant case are entirely different and, therefore, distinguishable. In the instant case, the employees were to be reinstated according to the agreement of the parties, without prejudice, and pursuant to the applicable civil service rules. The county civil service rules here in question specifically provided that on reinstatement, an employee was not to be deprived of sick leave benefits but could be deprived of certain benefits, such as vacation. The reinstatements did not follow these provisions. Accordingly, the reinstatements here were made in violation of Alameda County's own civil service rules, while in the Los Angeles case, the superintendent's attempt to save the fringe benefits were in excess of his powers under the Los Angeles civil service rules. Furthermore, that case was determined on its merits. The instant case is on appeal from an order sustaining a demurrer. The petition here alleges a good cause of action against respondents in terms of the violation of the civil service regulations and the antidiscrimination provision of Government Code section 3506, which was apparently not raised in the Los Angeles case. We also note that in the Los Angeles case, the court resolved the issue without reaching the question of the legality of the strike or the resulting strike settlement.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.