[Civ. No. 38823. First Dist., Div. One. Aug. 30, 1979.]

SAN FRANCISCO FIRE FIGHTERS, LOCAL 798,
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO,
Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Defendants and Respondents.

[Civ. No. 40705. First Dist., Div. One. Aug. 30, 1979.]

THE PEOPLE EX REL.
GEORGE EVANKOVICH, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent.

540

## COUNSEL

Evelle J. Younger and George Deukmejian, Attorneys General, Clayton P. Roche, Deputy Attorney General, Davis, Cowell & Bowe, Philip Paul Bowe, Duane W. Reno, Neyhart & Anderson, Neyhart, Anderson & Nussbaum, Neyhart, Anderson, Nussbaum & Reilly, John L. Anderson, Jerome M. Garchick, Peter D. Nussbaum, Brundage, Beeson & Pappy and Stephen H. Naiman for Plaintiffs and Appellants.

Van Bourg, Allen, Weinberg & Roger, Victor Van Bourg, William A. Sokol, Stephen Warren Solomon, Carole Heller Solomon, William J. Ramey, Ralph B. Saltsman, Emanuel Cowitt, Troy C. Lee and Joseph R. Grodin as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas M. O'Connor and George Agnost, City Attorneys, George E. Baglin and Burk E. Delventhal, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

**ELKINGTON, J.**—These two consolidated appeals were retransferred to us after grant of a hearing by the Supreme Court following our earlier decisions thereon, for reconsideration and determination on a single issue—"in light of Los Angeles County Civil Service Commission v. Superior Court (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249]."

The issue, as phrased by appellants, is: "Whether a cause of action was stated by the allegations of the complaint[s] that the Board of Supervisors [of the City and County of San Francisco (San Francisco)] failed to comply with the procedural requirements of Sections 3504.5 and 3505 of the Government Code prior to submitting to the electorate proposed amendments to the San Francisco Charter which change wages, hours, and other terms and conditions of municipal employment."

We have reconsidered the appeals, as directed, in the light of *Los Angeles County Civil Service Com. v. Superior Court.* Our conclusion is that the judgments of the superior court must be affirmed. We state our reasons.

■ California's Constitution, article XI, section 3, confers upon the electors of a chartered county or city, the *absolute right* to amend such a public entity's charter. It states that charter amendments may be proposed:

(1) By the required number of the county's or city's electors under the initiative (see Cal. Const., art. II, § 11); or,

(2) *By the county's or city's governing body.*[1]

---

[1] The full text of the state's Constitution, article XI, section 3, follows: "(a) *For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question.* The charter is effective when filed with the Secretary of State. *A charter may be amended, revised, or repealed in the same manner.* A charter, amendment, revision, or repeal thereof shall be published in the official state statutes. County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent

The Legislature may, of course, "enact legislation to facilitate the exercise of the powers directly granted by the Constitution" (*People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, 637 [268 P.2d 723]), such as the procedure for exercise of the constitutionally granted initiative process (*District Election etc. Committee* v. *O'Connor,* 78 Cal.App.3d 261 [144 Cal.Rptr. 442]). But such enactments " ' "must not in any particular attempt to narrow or embarrass" ' " the related constitutional provision. (*Chesney* v. *Byram,* 15 Cal.2d 460, 464 [101 P.2d 1106]; *Chester* v. *Hall,* 55 Cal.App. 611, 616 [204 P. 237].) " 'It is not and will not be questioned but that if the constitution has vested such power, it is not within the legislative power, either by its silence or by direct enactment, to modify, curtail, or abridge this constitutional grant.' " (*People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d at p. 637; *Western Assn. etc. R.R.* v. *Railroad Comm.,* 173 Cal. 802, 804 [162 P. 391, 1 A.L.R. 1455].) And it has been held " 'self-evident that the legislature itself could not abridge nor even hamper the exercise of those powers' " reserved by the Constitution to the electors of a city or county. (*Brown* v. *Boyd,* 33 Cal.App.2d 416, 421 [91 P.2d 926].)

Where the state's Constitution, as here, reserves legislative power to the people, statutes will be liberally construed so as to give effect to that power. (*Warner* v. *Kenny,* 27 Cal.2d 627, 629 [165 P.2d 889]; *Gage* v. *Jordan,* 23 Cal.2d 794, 799 [147 P.2d 387]; *Ley* v. *Dominguez,* 212 Cal. 587, 593 [299 P. 713].)

■ Article XI, section 3, of the state's Constitution thus gives to San Francisco's Board of Supervisors the *unabridged* right to propose charter amendments to the city's electors.

We next observe that the wages, hours, and conditions of employment embraced by the subject charter amendments are matters of local, not statewide, concern. (See Cal. Const., art. XI, §§ 4, 5.)[2] In *Sonoma County*

---

therewith. The provisions of a charter are the law of the State and have the force and effect of legislative enactments.

"(b) *The governing body or charter commission of a county or city may propose a charter or revision. Amendment or repeal may be proposed by initiative or by the governing body.*

"(c) An election to determine whether to draft or revise a charter and elect a charter commission may be required by initiative or by the governing body.

"(d) If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail." (Italics added.)

[2]California Constitution, article XI, section 4: "*County charters* shall provide for: . . . (f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attachés, and other persons to be employed, and

*Organization of Public Employees* v. *County of Sonoma,* 23 Cal.3d 296, 317 [152 Cal.Rptr. 903, 591 P.2d 1], the high court stated: "It seems clear to us . . . that both the language of the Constitution and prior authority support the proposition advanced by petitioners that the determination of the wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern." Appellants have expressed no disagreement.

Adverting now to the here at issue Government Code sections 3504.5 and 3505, we note that they are part of the Meyers-Milias-Brown Act (enacted 1968) which is codified as part 7, division 4, chapter 10 (entitled "Local Public Employee Organizations") and as sections 3500-3510, of the Government Code.

It provides, inter alia, that "public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." (Gov. Code, § 3502.) It also requires that the public employer *"shall give reasonable written notice* to [the] employee organization affected of any ordinance, rule, resolution, or regulation directly relating to matters" within the employee organization's scope of representation, and give the "employee organization the opportunity to meet with" representatives of the public employer. (Gov. Code, § 3504.5.) It then provides that such public employer representatives and the employee organization *"shall meet and confer in good faith"* in respect of such matters. (Gov. Code, § 3505.) (The italics of this paragraph have been supplied by us.)

---

for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal. . . ." (Italics added.)

California Constitution, article XI, section 5: ". . . (b) It shall be competent in all *city charters* to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovernment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees." (Italics added.)

Parenthetically, at this point, we opine that a legislative purpose that the Meyers-Milias-Brown Act shall *necessarily* apply to proposals to amend a county's or city's charter in respect of wages, hours and conditions of employment, is most unlikely. It will be recalled that the state's Constitution, article XI, section 3 (fn. 1, *ante*), provides that such proposals shall be by *"initiative or by the governing body."* (Italics added.) Application of Government Code section 3505's "meet and confer" requirements to a county's or city's *initiative process* would be manifestly impossible. Nor is it reasonable to suppose a purpose that the Meyers-Milias-Brown Act apply to one, but not to the other, of the constitutional alternatives.

But we conclude that Government Code section 3504 is dispositive of the appeals. It provides that a local public entity's duty to meet and confer in good faith *does not extend to a consideration of the "merits [or] necessity" of any public "activity provided by law . . . ."*[3]

Giving effect to section 3504, it has been held that a public agency is bound to so "meet and confer" *only* in respect of *"any agreement that the public agency is authorized* [by law] *to make . . . ."* (*East Bay Mun. Employees Union* v. *County of Alameda,* 3 Cal.App.3d 578, 584 [83 Cal.Rptr. 503]; italics added.) The agency must "meet and confer" on such wages, hours, and conditions of employment matters *as it would be permitted by law to voluntarily engage upon.* "[T]he entire import of the Meyers-Milias-Brown Act is to permit as much flexibility in employee-governmental agency relations with regard to all aspects in the employer-employee milieu *as a voluntary system will permit."* (*San Joaquin County Employees' Assn., Inc.* v. *County of San Joaquin,* 39 Cal.App.3d 83, 88 [113 Cal.Rptr. 912]; italics added.) It is only when " 'the [voluntary] rules and regulations of a public agency do not meet the standard [of the Meyers-Milias-Brown Act, that] the deficiencies of those rules and regulations as to rights, duties and obligations of the employer, the employee, and the employee organization, are supplied by the appropriate provisions of the act.' " (*Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach,* 58 Cal.App.3d 492, 502 [129 Cal.Rptr. 893];

---

[3]The full text of Government Code section 3504 follows: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order."

*Los Angeles County Firefighters, Local 1014* v. *City of Monrovia,* 24 Cal.App.3d 289, 295 [101 Cal.Rptr. 78].)

It is observed also, that the guideline case of *Los Angeles County Civil Service Com.* v. *Superior Court, supra,* 23 Cal.3d 55, expressly recognizes a county's section 3504 privilege not to "meet and confer" in relation to the *merits or necessity of any activity provided by law.* (P. 63.)

█ It will thus be seen that a county or city is required by the Meyers-Milias-Brown Act to "meet and confer" with employee representatives on wages, hours, and conditions of employment, *only* in respect of such agreements and changes in its rules and regulations as it would be permitted *by law* to make or enter upon.

*Los Angeles County Civil Service Com.* v. *Superior Court concerned no county or city charter amendment.* There, a county charter established a civil service commission and gave that agency broad powers, including the authority to adopt and amend its own rules, but "only after public notice and hearing." The commission proposed to amend its rules "governing layoffs and grade reductions in lieu of layoff." Employee representatives' requests that the commission "meet and confer in good faith" with them according to Government Code section 3505 were rejected, leading to litigation which finally reached the state's high court. The civil service commission there contended that the county's constitutionally ordained ("home-rule") charter provisions controlled over the Meyers-Milias-Brown Act.

The Supreme Court disagreed. It found no conflict between the Meyers-Milias-Brown Act's "meet-and-confer session and an objectively conducted public hearing." Instead it concluded, in effect, that such "meet-and-confer" sessions were implementive of the charter's civil service provisions, for "guaranteeing public employees an opportunity to have their views seriously considered . . . serves employees' interests without destroying the [civil service] commission's merit objectives," or otherwise affecting constitutional purpose. Instead of curtailing, or abridging, or hampering, the related charter provisions, the Meyers-Milias-Brown Act was found to be in aid of them. (See *People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d 621, 637; *Brown* v. *Boyd, supra,* 33 Cal.App.2d 416, 421.) The county's civil service commission was accordingly denied relief.

Thus, in *Los Angeles County Civil Service Com.* v. *Superior Court,* the commission was freely permitted by the county's charter and otherwise by law, to adopt appropriate rules for, and to engage in, "meet and confer" sessions. No controlling law or executive order would be abridged (see Gov. Code, § 3504, fn. 3, *ante*); instead the sessions would relate to such an agreement as "the public agency is authorized to make" (see *East Bay Mun. Employees Union* v. *County of Alameda, supra,* 3 Cal.App.3d 578, 584). And assuredly, no constitutional requirement would have been contravened by such sessions. Application of the Meyers-Milias-Brown Act was accordingly mandated.

■ On the other hand, in the case at bench San Francisco's governing body, its board of supervisors, was by the Constitution given absolute authority to propose charter amendments to the city's electorate. As pointed out, " 'it is not within the legislative power, either by its silence or by direct enactment, to modify, curtail, or abridge this constitutional grant.' " (See *People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d 621, 637; *Western Assn. etc. R.R.* v. *Railroad Comm., supra,* 173 Cal. 802, 804.)

Application of the Meyers-Milias-Brown Act's "meet and confer" provisions to the case before us would bring about the following results.

San Francisco's Board of Supervisors, before proposing any charter amendment affecting wages, hours, and conditions of employment must give written notice thereof to appropriate employee representatives. The board of supervisors, or its representatives, will then "meet and confer" in good faith *on the question whether there shall be such a charter amendment proposal, and if so, upon its terms.*

The parties in such a case must display "a genuine desire to reach agreement," and "must make a serious attempt to resolve differences and reach a common ground . . . ." (*Placentia Fire Fighters* v. *City of Placentia,* 57 Cal.App.3d 9, 25 [129 Cal.Rptr. 126].) The city's representatives would be under a "duty to bargain" and to "give and take," with "proposals and counterproposals" and "an open mind and sincere intention to reach an agreement" or "compromise." (See *Los Angeles County Civil Service Com.* v. *Superior Court, supra,* 23 Cal.3d 55, 61; *Glendale City Employees' Assn., Inc.* v. *City of Glendale,* 15 Cal.3d 328, 336 [124 Cal.Rptr. 513, 540 P.2d 609] [cert. den., 424 U.S. 943 (47 L.Ed.2d 349, 96 S.Ct. 1411)]; *State Assn. of Real Property Agents* v. *State Personnel*

*Bd.*, 83 Cal.App.3d 206, 211 [147 Cal.Rptr. 786]; *Placentia Fire Fighters* v. *City of Placentia, supra,* pp. 22-25; *Lipow* v. *Regents of University of California,* 54 Cal.App.3d 215, 227 [126 Cal.Rptr. 515]; *Dublin Professional Fire Fighters, Local 1885* v. *Valley Community Services Dist.,* 45 Cal.App.3d 116, 118-119 [119 Cal.Rptr. 182]; *San Juan Teachers Assn.* v. *San Juan Unified Sch. Dist.,* 44 Cal.App.3d 232, 252, fn. 13 [118 Cal.Rptr. 662]; *East Bay Mun. Employees Union* v. *County of Alameda, supra,* 3 Cal.App.3d 578, 584, fn. 10; Gov. Code, § 3505; Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 731, 732, 749.) If the conferring parties shall reach an impasse they are permitted to settle the dispute through *mediation,* if possible. (Gov. Code, § 3505.2; *Alameda County Employees' Assn.* v. *County of Alameda, supra,* 30 Cal.App.3d 518, 523-525.) If the parties' representatives reach and prepare a "memorandum of agreement," and secure its approval by the city's board of supervisors, the charter amendment proposal will be modified, or not be made at all, according to the agreement. And if the city's representatives shall fail to meet the employees' representatives' concept of "good faith" bargaining then the proposed charter amendment election, at the latter's option, will ordinarily await the uncertain outcome of mandate proceedings. (See *Los Angeles County Civil Service Com.* v. *Superior Court, supra,* 23 Cal.3d 55; *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach, supra,* 58 Cal.App.3d 492; *San Leandro Police Officers Assn.* v. *City of San Leandro,* 55 Cal.App.3d 553 [127 Cal.Rptr. 856].)

Any argument that such was the statutory purpose must be rejected.

We discern in the state's Constitution, article XI, section 3 (see fn. 1, *ante*), a clear purpose that when a county's, or city's, governing body shall find it to be in the public interest to propose a specific charter amendment for adoption by the electorate, it shall have the absolute and untrammeled right and duty to do so. Just as clearly appears a corollary intent that such charter amendment proposals, or the decision whether they be made at all, shall not be the product of bargaining and compromise between the public entity's representatives, and others.

It was undoubtedly with such considerations in mind that the Legislature enacted Government Code section 3504 to provide that the Meyers-Milias-Brown Act's duty to "meet and confer" did "not include consideration of the merits [or] necessity . . . of any . . . activity provided by law . . . ." (See fn. 3, *ante.*) In the case at bench, proposal of charter

amendments deemed appropriate by San Francisco's governing body was an activity provided by the highest law of the state, i.e., its Constitution. Under section 3504 consideration of the *merits* or *necessity* of such a proposal was *expressly* exempted from the "meet and confer" requirements of the Meyers-Milias-Brown Act.

And even in the absence of Government Code section 3504's express exemption of charter amendments from operation of the Meyers-Milias-Brown Act, we should nevertheless be obliged to hold that the Constitution's absolute grant of authority to counties' and cities' governing bodies, to propose charter amendments to the electors, must be respected. ■ It is settled that the constitutionally prescribed method of amending a city's charter is "exclusive" and "mandatory," and any other method is "prohibited." (*State Board of Education* v. *Levit*, 52 Cal.2d 441, 461 [343 P.2d 8]; *Santa Clara County* v. *Superior Court*, 33 Cal.2d 552, 554 [203 P.2d 1]; *Blanchard* v. *Hartwell*, 131 Cal. 263, 266-267 [63 P. 349]; *Garver* v. *Council of City of Oakland*, 96 Cal.App. 560, 562 [274 P. 375].) "The mode provided in the constitution for the proposal of charters is deemed to be the measure of power." (*Doran* v. *Foster*, 189 Cal. 610, 611 [209 P. 548]; and see *People* v. *City of San Buenaventura*, 213 Cal. 637, 640 [3 P.2d 3].) Appellants' argument would add to the constitutional requirements for amending the city's charter other and onerous conditions, in clear contravention of this rule.

We have considered the argument that our holding would necessarily allow charter cities to "escape [the Meyers-Milias-Brown Act] through the strategem of engaging in or avoiding labor relations through the charter amendment process." It is suggested that some unfairness or other public or social evil would result. As we have pointed out, by virtue of Government Code section 3504 the act does not apply to the "merits [or] necessity" of charter amendment "activity provided by" the state's Constitution. But were it otherwise, we would observe no prejudice in such a charter amendment election attended by free and open debate, and an opportunity for interested parties to make written ballot argument as provided by law. (See Elec. Code, §§ 5012-5016, 5350.) "All political power is inherent in the people. Government is instituted for their protection, security, and benefit, and they have the right to alter or reform it when the public good may require." (Cal. Const., art. II, § 1.) "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." (*Id.*, art. IV, § 1.) "[T]he people

in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate. But if there be any danger that the people cannot evaluate the information and arguments . . . it is a danger contemplated by the Framers of the First Amendment." (*First National Bank of Boston* v. *Bellotti*, 435 U.S. 765, 791-792 [55 L.Ed.2d 707, 727-728, 98 S.Ct. 1407, 1424], fns. omitted.)

■ From all of the foregoing it appears that no "cause of action was stated by the allegations of the complaint[s] that the Board of Supervisors [of the City and County of San Francisco] failed to comply with the procedural requirements of Sections 3504.5 and 3505 of the Government Code prior to submitting to the electorate proposed amendments to the San Francisco Charter which change wages, hours, and other terms and conditions of municipal employment."

We now iterate our earlier analysis, reasons, and determinations in respect of the remaining issues of the appeals.

One of them is stated as follows: ■ "Whether a cause of action was stated by the allegations of the complaint[s] that the submission to the electorate and subsequent adoption of the proposed amendments to the San Francisco Charter set forth in [the ballot propositions] contravened a written agreement executed by Mayor Joseph L. Alioto in the exercise of emergency powers granted him by the Charter."

The issue is based upon section 3.100 of the city's charter which provides: "In case of public emergency involving or threatening the lives, property or welfare of the citizens, or the property of the city and county, the mayor shall have the power, and it shall be his duty, to summon, organize and direct the forces of any department in the city and county in any needed service; to summon, marshal, deputize or otherwise employ other persons, or to do whatever else he may deem necessary for the purpose of meeting the emergency. The mayor may make such studies and surveys as he may deem advisable in anticipation of any such emergency."

Under the claimed authority of this provision the city's mayor declared an emergency on account of a fire fighters' and policemen's strike, and then himself reached and signed, on behalf of the city, an agreement

acceptable to the strikers. The agreement declared in part: "4. Amnesty. The City agrees that as an essential condition of this Agreement it shall provide 'Total Amnesty' as to all occurrences arising out of or related to the recent labor dispute. 'Total Amnesty' shall include, but not be limited to, action of any kind which in any way adversely affects or discriminates in regard to hire or tenure of employment, or any wages, terms or conditions of employment." The proposed charter amendments were contrary to the amnesty agreement.

It is argued that since section 3.100 of the city's charter gave the mayor power to do whatever "he may deem necessary for the purpose of meeting the emergency," the city's electors were powerless to amend the charter in any manner contrary to the "Amnesty" provision of the agreement signed by the mayor.

This argument also lacks validity. Such power as the mayor may have had to declare an emergency and agree to conditions of the strike's settlement was derived from the city's charter. The charter was subject to "conflicting provisions in the United States and California Constitutions, and to preemptive state law." (*Harman* v. *City and County of San Francisco,* 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 887, 496 P.2d 1248, 1255].) Among such conflicting provisions were Government Code section 34459, and the state's Constitution, article XI, section 3, empowering the city's board of supervisors to propose charter amendments for consideration by the city's electors. We accordingly find the second appellate contention also to be invalid.

No merit is seen in the argument that a holding of *Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra,* 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609] (cert. den., 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411]), somehow validates the city's mayor's "amnesty agreement." In that case, an agreement between the city's legislative body, with full constitutional, statutory and charter authority to enter into such an agreement, and the city employees' association was declared valid. Here, as we have pointed out, the city's mayor was without authority to abrogate constitutional requirements for amendment of the city's charter.

■ The remaining argument of the appeals is that the city's charter amendment election was void because it was "submitted in violation of mandatory and prohibitory provisions [of § 2.23] of the San Francisco Administrative Code."

Section 2.23, and the administrative code in which it was to be found, were enacted by ordinance of the city's board of supervisors. The section's preamble stated: "Any proposal for amendment of the charter ordered submitted to the electors by the board of supervisors on its own motion shall be so ordered pursuant to the provisions of applicable state law, with the further limitations imposed as follows: . . . ." There follow generally provisions for reference of the proposed amendment to, and reports thereon from, a committee of the board of supervisors and certain of the city's agencies and officials, and concerning allotted time periods therefor.

The complaints of the respective actions and judicial notice properly taken by the trial court established, and it appears conceded, that the requirements of section 2.23 were not substantially followed by the city's board of supervisors in relation to the charter amendment election.

The city contends that the section constituted an invalid self-imposed abridgment (it will be noted that it is expressly described as "limitations" by its preamble) of the constitutional power conferred upon its board of supervisors to propose charter amendments.

Appellants, on the other hand, insist that it was implemental (as found proper in *Chesney* v. *Byram, supra,* 15 Cal.2d 460, 464 [101 P.2d 1106] and *Warner* v. *Kenny, supra,* 27 Cal.2d 627, 629 [165 P.2d 889]) of the constitutional authority to propose such charter amendments.

We need not resolve this argument for, assuming arguendo the validity of appellants' position thereon, we are of the opinion that other legal principles mandate the conclusion that the final contention of the appeal is likewise without merit.

In *Rideout* v. *City of Los Angeles,* 185 Cal. 426, 430-431 [197 P. 74, 75] it is stated: "It is a primary principle of law as applied to election contests that it is the duty of the court to validate the election if possible. That is to say, the election must be held valid unless plainly illegal. . . . Accordingly, a distinction has been developed between mandatory and directory provisions in election laws; a violation of a mandatory provision vitiates the election, whereas a departure from a directory provision does not render the election void if there is a substantial observance of the law and no showing that the result of the election has been changed or the rights of the voters injuriously affected by the deviation. . . . Whether or not a

provision, the observance of which is not expressly declared by law to be essential to the validity of the election, is mandatory or merely directory, depends upon the character of the act prescribed. If the act enjoined goes to the substance or necessarily affects the merits or results of the election, it is mandatory; otherwise directory."

*Menlo Park City School Dist.* v. *Tormey,* 218 Cal.App.2d 76, 80-81 [32 Cal.Rptr. 82, 84] quotes with approval these rules: " '[W]e are of the opinion that the correct rule, and the one supported by the great weight of authority, may be stated as follows: Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void. . . .' . . . 'Upon considerations like these the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have, in truth, been called upon and have spoken.' "

*Dennen* v. *Jastro,* 23 Cal.App. 264, 267 [137 P. 1069, 1076] says: "A failure to comply with some technical direction of the statute, where due alone to mistake or inadvertence on the part of those whose duty it is to prepare and furnish the ballot, should not disfranchise the entire vote of the district and vitiate the election, unless it be made to appear that by reason of the irregularity the result was different from what it would otherwise have been, or that it prevented the voter from freely, fairly, and honestly expressing his choice . . . ."

The rule has often been iterated; see *Canales* v. *City of Alviso,* 3 Cal.3d 118, 127 [89 Cal.Rptr. 601, 474 P.2d 417]; *Scott* v. *Kenyon,* 16 Cal.2d 197, 202 [105 P.2d 291]; *Davis* v. *County of Los Angeles,* 12 Cal.2d 412, 426-427 [84 P.2d 1034]; *Kenworthy* v. *Mast,* 141 Cal. 268, 271 [74 P. 841]; *Hayes* v. *Kirkwood,* 136 Cal. 396, 401-402 [69 P. 30]; *Murphy* v. *City of San Luis Obispo,* 119 Cal. 624, 632 [51 P. 1085]; *Atkinson* v. *Lorbeer,* 111 Cal. 419, 421 [44 P. 162]; *Tebbe* v. *Smith,* 108 Cal. 101, 111-112 [41 P. 454]; *Russell* v. *McDowell,* 83 Cal. 70, 77-78 [23 P. 183]; *Alden* v. *Superior Court,* 212 Cal.App.2d 764, 771-772 [28 Cal.Rptr. 387].

It does not appear from the actions' complaints or otherwise, nor is it contended that the city's board of supervisors' failure to follow section 2.23 "injuriously affected the rights of the voters," or "affected the results of the election," or "prevented electors from giving a full and free expression of their will at the election," or "from freely, fairly, and honestly expressing [their] choice . . . ."

It follows that the requirements of section 2.23 in the case before us must be deemed *directory,* and that the city's board of supervisors' failure to observe them did not affect the validity of the charter amendment election.

For these several reasons the complaints of the instant actions and relevant judicial notice taken in aid of them established no cause of action against the city, or its board of supervisors, or anyone, and the respective judgments of dismissal were properly entered.

It is found unnecessary to consider other contentions and points raised by the parties, including the city's contention that an official act of a state or municipal legislative body will never be declared void for noncompliance with rules of procedure made by itself (see *City of Pasadena* v. *Paine,* 126 Cal.App.2d 93, 96 [271 P.2d 577]; *McDonald* v. *State,* 80 Wis. 407 [50 N.W. 185, 186]; *South Georgia Power Co.* v. *Baumann,* 169 Ga. 649 [151 S.E. 513, 516]), and the argument that the San Francisco Fire Fighters' union may not rely upon an agreement whose validity depends upon an emergency created by itself in violation of law (see Lab. Code, § 1962).

The judgments are affirmed.

Racanelli, P. J., and Newsom, J., concurred.

Appellants petitions for a hearing by the Supreme Court were denied November 8, 1979. Bird, C. J., Tobriner, J., and Newman, J., were of the opinion that the petitions should be granted.