[Civ. No. 54331. First Dist., Div. Four. Nov. 10, 1982.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715, AFL-CIO, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY et al., Respondents.

**COUNSEL**

Van Bourg, Allen, Weinberg & Roger and Stewart Weinberg for Petitioner.

Selby Brown, Jr., County Counsel, and Steven M. Woodside, Deputy County Counsel, as Amici Curiae on behalf of Petitioner.

Morrison & Foerster, Raymond L. Wheeler and Philip J. McConnaughay for Respondents.

OPINION

**CALDECOTT, P. J.—** ■ The basic issue presented by this appeal is whether employees who serve the superior court in Santa Clara County are employees of the court or of the county.

The Service Employees International Union, Local 715, AFL-CIO (union or petitioner) petitions this court for a writ of mandate requiring the Superior Court for the County of Santa Clara and its clerk, John Kazubowski (respondents) "to comply with the memorandum of understanding negotiated between the County of Santa Clara and the Petitioner Service Employees International Union, Local 715, and to refrain from exercising authority vested by the Charter of the County of Santa Clara and the Personnel Board of the County of Santa Clara, and to refrain from exercising or attempting to exercise the authority of the Personnel Director and employer/employee relations representatives of the County of Santa Clara in dealings with Service Employees International Union, Local 715 AFL-CIO."

The petition is filed in this court in the first instance as the lowest level court having jurisdiction over the parties and subject matter. No objection is made to this court's jurisdiction. On May 25, 1982, the alternative writ issued.

The County of Santa Clara (county) and petitioner have entered into a memorandum of understanding for the period July 1981-June 1983, which recognizes the union "as exclusive bargaining representative for all classified and unclassified workers in coded classifications within the following bargaining units: Clerical - Administrative, Professional and Technical - Blue Collar - Public Health Nursing." The agreement covers a wide range of employment-related subjects such as disciplinary actions, layoff, hours of work, leave provisions, benefit programs, grievance procedures. It incorporates the salary ordinance adopted annually by the county which sets forth wages of covered employees.

As negotiations between the county and the union commenced, respondent court "proposed the establishment of a separate representation unit for exempt and non-exempt employees performing functions for the Court, in order to provide a vehicle for negotiations in which the Court could effectively participate." By letter dated April 27, 1981, Homer B. Thompson, Presiding Judge, notified the county and the union that the court would not be bound by any agreements affecting employees performing services for the court, unless the court specifically agreed to be bound. During negotiations, the county presented a proposal "representing the position of the Superior Court, seeking to create a separate Superior Court bargaining unit and exempting the Court from the contract being negotiated. The Union rejected these proposals." On

July 9, 1981, Judge Thompson wrote to the county and the union stating that the court would not be bound by the agreement.

The union alleges in its petition that a dispute arose between the County of Santa Clara and petitioner regarding the filling of vacancies in the position of superior courtroom clerk.[1] The union had proposed that this position be filled from permanent clerks employed by the county clerk's office "before any lateral transfers or new appointments are accepted." The county objected to giving such unique job rights to the clerks thus barring persons on the eligible list for consideration and hampering the judge from choosing a clerk with whom he could work well.

The Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510)[2] (MMBA) governing the labor relations of local government employees in California, requires "the governing body of a public agency," or its representatives, to meet and confer in good faith "regarding wages, hours, and other terms and conditions of employment" with representatives of "recognized" employee organizations.[3] (§ 3505.) If agreement is reached by the representatives, they must jointly prepare a written memorandum of such understanding "which shall not be binding" and present it to the governing body "or its statutory representative" for determination. (§ 3505.1.) Although the statute is silent as to whether the memorandum is enforceable if accepted by the governing body, the courts have held that it is. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 337-338 [124 Cal.Rptr. 513, 540 P.2d 609].)

Respondents contend that employees performing duties for the superior court are not covered by the MMBA because they are employed by the court and not by the county. The court's position is that the court is the employer and since it is not a *local* employer within the meaning of the MMBA, it has no duty to meet and confer with any employee organization. The court considers itself a *state* employer because it is a court of the State of California.

The appropriate starting point in resolving the conflict between the positions of petitioner and respondents is to determine whether the county is the employer for purposes of the MMBA. Section 3501, subdivision (c) provides: "Except as otherwise provided in this subdivision 'public agency' means every governmental subdivision, every district, every public and quasi-public corporation, every public agency and public service corporation and every town,

---

[1] The petitioner does not concede that other court personnel are not included in the memorandum of understanding but it does not argue the point.

[2] All statutory references are to the Government Code unless otherwise indicated.

[3] The method by which an employee organization becomes "recognized" in the County of Santa Clara is provided by ordinance and is initiated by petition of at least 30 percent of the employees within the proposed unit.

city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not. As used in this chapter, 'public agency' does not mean a school district or a county board of education or a county superintendent of schools or a personnel commission in a school district having a merit system as provided in Chapter 3 (commencing with Section 13580) of Division 10 of the Education Code or the State of California."

Indisputably, if the *county* is the employer of court personnel, the MMBA applies since counties are specifically included in subdivision (c).

Respondents take the position that the county is not the employer because the court has the right to control the employees and the right to hire and discharge. To establish the foundation for this position, respondents analyze the organization of the court's personnel in detail. Basically, the employees can be divided into two groups. One group is designated by respondents as the court executive office and the other as the county clerk's office. The court executive office is supervised by the court's executive officer, John Kazubowski, who was appointed by the court pursuant to section 69898.[4] The personnel in this group are appointed by the court either under specific statutory authority, (§§ 69892 and 69905),[5] or by general statutes requiring the county board of supervisors to pro-

---

[4]Government Code section 69898 provides in pertinent part that: "(a) Any superior court may appoint an executive officer who shall hold office at the pleasure of the court and shall exercise such administrative powers and perform such other duties as may be required of him by the court. The court shall fix the qualifications of the executive officer and may delegate to him any administrative powers and duties required to be exercised by the court. He shall supervise the secretaries of the judges of the court and perform, or supervise the performance of, the duties of jury commissioner. The salary of the executive officer shall be fixed by the court and shall be paid by the county in which he serves. Each such position shall be exempt from civil service laws.

"Any superior court may appoint the county clerk as executive officer, who shall hold office as such executive officer at the pleasure of the court and shall exercise such administrative powers and perform such other duties as may be required of such person by the court. . . .

"(c) In every superior court having an executive or administrative officer appointed under the provisions of this section or under a specific statutory authorization, that officer has the authority of a clerk of the superior court."

[5]Government Code section 69892 provides in pertinent part: "In a county having a population of over 82,000 and not over 1,500,000 as determined by the 1960 federal census [the population of the County of Santa Clara is designated as 1,064,714 in Government Code section 28020], the judge of the superior court may appoint a secretary and two assistant secretaries and not to exceed one additional assistant secretary for each department of the superior court in the county over three. Such appointees shall be exempt from civil service. The board of supervisors shall fix the salary of the secretary and assistant secretaries at rates equivalent to the salary rate of *county employees* holding comparable positions under the county civil service or merit system. . . . The salary of the secretary shall not be less than three hundred dollars ($300) a month and the salary of an assistant secretary shall not be less than two hundred seventy-five dollars ($275) a month." (Italics added.)

Government Code Section 69905 provides: "In any county a majority of the judges of the superior court may, with the approval of a majority of the board of supervisors, appoint research assistants. The number and compensation of research assistants shall be set by the board of supervisors. The compensation of such research assistants shall be paid by the county in which they serve."

vide for court attendants and court facilities. (See §§ 68073 and 69647.)[6]

These employees and attachés include such titles as commissioners, referees, reporters, secretaries, legal research assistants and stenographers. The statutes provide that these positions are exempt from civil service and serve at the pleasure of the court. The salaries of each of these positions is set pursuant to statute and the statute in some cases specifies the number of positions in each class.

The second group of employees are those in the county clerk's office which is also headed by respondent John Kazubowski. The county clerk is appointed by the county and is an officer of the county. (§ 24000, subd. (c).) The county clerk also serves as clerk of the superior court by virtue of the constitutional provision that "The county clerk is ex officio clerk of the superior court in the county" (Cal.Const., art. VI, § 4) and the statutory provision that "The county clerk shall act as clerk of the superior court in and for his county." (§ 26800.) All employees of the county clerk's office are appointed by the clerk as deputy clerks—some serve as deputy county clerks and some as deputy clerks of the superior court. All of the 106 employees of the county clerk's office work exclusively on court business except for seven and these often work on court business.

These employees are appointed by the county clerk, a county officer. They are members of the county civil service and are hired, promoted, disciplined and fired according to the county civil service rules. Deputy clerk salaries and number of positions are set by the board of supervisors.

We have not found any case that specifically tells us the status of either group of employees; however, a number of Government Code sections mention "superior court employees" as distinguished from "county employees."

Respondents contend that it is the superior court and not the county that has the exclusive right to control the duties of court personnel and thus the superior court is the employer. Respondents point to the "right to control" test to determine the existence of the employee-employer relationship and cite cases which deal with the distinction between an employee and an independent contractor.

---

[6]Government Code section 68073 provides in pertinent part: "In each county the board of supervisors shall provide suitable rooms for holding the superior . . . courts, for the chambers of the judges of said courts and for court attendants, together with sufficient attendants . . . for the transaction of the business of the courts.

"If the board of supervisors of any county does not provide . . . for the court attendants, together with sufficient attendants . . . for the transaction of the business of the courts, the courts or the judge or judges of such courts may direct the sheriff of the county to provide the same. The expenses incurred in providing the same, certified by the judge or judges to be correct, are a charge against the county treasury, and shall be paid out of the general fund."

(Citing *Empire Star Mines Co.* v. *Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43 [168 P.2d 686] and *City of Los Angeles* v. *Vaughn* (1961) 55 Cal.2d 198, 199-200 [10 Cal.Rptr. 457, 358 P.2d 913].) While this characteristic is recognized as an element of the employee relationship, it is not the sole element involved in the employee-employer relationship.

Other factors to consider are the power to discharge the employee, payment of salary, nature of the services. The parties' belief as to the employment relationship is also to be considered.

In analyzing the status of these employees we will commence with the first group of employees as mentioned above. The positions in this group are referred to in the statutes as attachés and employees of the superior court. As previously stated they are exempt from civil service. They are appointed by the court and serve at the pleasure of the court. The court has the exclusive right to control the duties of these employees. It is only in the payment of salary and benefits that the county is involved. These attachés and employees are clearly employees of the superior court and not the county.

As to the second group, the deputy clerks, they are appointed by a county officer, they are members of the county civil service and are hired, promoted, disciplined and fired according to county civil service rules. Deputy clerks' salaries and the number of positions in each classification is set by the board of supervisors. Their salary is paid by the county. The only employment factor that raises a question is the one of control, and actually they are subject to dual control by both the court and the county clerk. As stated in *Empire Star Mines Co.* v. *Cal. Emp. Com., supra,* 28 Cal.2d 33, at page 43: "If the employer has the authority to exercise *complete* control . . . an employer-employee relationship exists. Strong evidence in support of an employment relationship is the right to discharge at will, without cause." (Italics added.) The court has neither the right to complete control nor the right to discharge, with or without cause. The county clerk is charged by statute with the performance of certain duties for the court (§ 69841 et seq.) and must have sufficient control over his deputies to insure that his statutory obligations are performed. Thus the control of these deputies is shared by the court and the clerk and neither has complete or exclusive control. In weighing of these factors it is clear that the deputy clerks are county employees.

As the MMBA governs the labor relations of only the county employees the deputy clerks here are included under the act, but as the employees and attachés of the superior court are not county employees they are not included under the act.

The respondent court contends that the authority to control the duties and working conditions of the courtroom clerks is essential to the exercise of its

judicial power. Respondents fall back on an inherent power in the court "to supervise and control the duties, hours, and working conditions of officers and employees serving the Court." This inherent power, according to respondents is codified in Code of Civil Procedure section 128, subdivision 5, which provides that "Every court shall have power: . . . To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto; . . ." The examples given of the application of this power are *Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 64 [115 Cal.Rptr. 247, 524, P.2d 375] [jurisdiction of court to require jury commissioner to select jurors without regard to one-year residence requirement]; *Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190, 206 [124 Cal.Rptr. 427] [power to issue protective orders and seal orders]; *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 504 [120 Cal.Rptr. 176] [power to require plaintiffs to be physically present at mandatory settlement conference]; *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 826 [85 Cal.Rptr. 744] [power of court to require public defender to assist defendant who was representing himself]. Similarly respondents call attention to Code of Civil Procedure section 187, which declares that a court has "all the means necessary" to carry its jurisdiction into effect and Government Code section 68070, which authorizes a court of record to "make rules for its own government and the government of its officers."

The superior court is charged by the Constitution and statutes with the performance of certain duties. Should the county or any of its employees interfere with the performance of these duties the court has the authority to take such action as is necessary to allow it to fulfill the obligations imposed upon it by law.

The respondents and each of them are directed to comply with the memorandum of understanding negotiated between the County of Santa Clara and the petitioner, Service Employees International Union, Local 715, as to the courtroom clerks only.

The alternative writ is discharged and the petition for writ of mandate denied to the extent they are inconsistent with the above. The peremptory writ of mandate to issue accordingly.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied December 10, 1982.