[No. D016708. Fourth Dist., Div. One. Dec. 2, 1992.]

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, LOCAL 3300, Petitioner, v. COUNTY OF SAN DIEGO, Respondent.

## COUNSEL

Rothner, Segall & Bahan and Anthony R. Segall for Petitioner.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, John J. Sansone and Miriam Milich, Deputy County Counsel, for Respondent.

## OPINION

**TODD, J.**—The Board of Supervisors of San Diego County (Board) reversed a decision of a hearing officer requiring the County of San Diego (County) to meet and confer, under the Meyers-Milias-Brown Act (Gov. Code,[1] §§ 3500-3510; MMBA) with Local 3300 of the American Federation of State, County and Municipal Employees, AFL-CIO (Local 3300) concerning noneconomic benefits of employment for employees of the Superior Court of San Diego County (Superior Court[2]). The "noneconomic" benefits at issue are within the scope of section 69904, subdivision (b), authorizing a majority of the judges of the Superior Court to adopt personnel regulations entitling Superior Court employees "to step advancement, vacation, sick leave, holiday benefits, other leaves of absence, and other benefits . . . ."

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] For purposes of this opinion, "Superior Court" with the first letter of each word capitalized, refers only to the San Diego County Superior Court unless the context requires otherwise.

The County met and conferred under the MMBA only with respect to the "economic" benefits within the scope of section 69904, subdivision (a), which deals with establishing and adjusting titles and rates of compensation for Superior Court employees "by joint action and approval of the board of supervisors and a majority of the judges of the court." The County and Local 3300 ratified a memorandum of agreement (MOA) covering the period July 25, 1990, through June 30, 1992, and a majority of the Superior Court judges approved its provisions concerning salaries and overtime compensation.

Section 69904 has been in effect since January 1, 1975. (Stats. 1974, ch. 785, § 1, p. 1710.)

In this proceeding under unfair labor practice charge No. 90-02 alleging the County's failure to meet and confer in good faith, brought under the County's Labor Relations Ordinance (LRO) article VII, section 1(c), the hearing officer primarily relied on section 3501.5 of the MMBA in ruling against the County. Added in 1988, section 3501.5 provides, in part, "[S]uperior court employees shall be considered employees of the county for all matters within the scope of representation."

On December 10, 1991, by a unanimous vote, the Board reversed the May 24, 1991, decision of the hearing officer. On May 8, 1992, Local 3300 filed this original proceeding petitioning for a writ of mandate ordering the County to meet and confer about all subjects within the statutory scope of representation.

Based largely upon application of rules requiring that we harmonize statutes in the context of the statutory framework as a whole, avoid repeal of statutory language by implication and not render it surplusage, and presume that the Legislature was aware of existing, related law when it enacted section 3501.5, we uphold the determination of the Board and deny the petition.

In summary, our view is that at the time section 3501.5 was enacted, and at the present time, superior courts were not (and are not) "public agencies" subject to the MMBA, and the Legislature provided (and still provides) that noneconomic benefits of Superior Court employees were and are to be determined by a majority of the judges of the Superior Court. The County plays no role in the determination of these noneconomic benefits. Thus, with respect to the Superior Court, the phrase "all matters within the scope of representation" in section 3501.5 does not encompass County representation of Superior Court employees under the section for purposes of meeting and conferring about noneconomic benefits that are within the sole

control of a majority of the judges of the Superior Court. Under this view the County did not engage in an unfair labor practice for refusing to meet and confer with Local 3300 on the subject of noneconomic benefits of the Superior Court employees, and the Board properly reversed the decision of the hearing officer to the contrary.

## FACTS

In April 1990, Local 3300 was certified as the exclusive representative of the employees of the Superior Court. Approximately 420 deputy court clerks, court services clerks, court interpreters, probate examiners, record clerks and deputy jury commissioners are represented by Local 3300. In May and June 1990, Local 3300 and the County met and conferred in connection with reaching a MOA with respect to Superior Court employees. The County took the position it would bargain only with respect to subjects it believed it had statutory authority to determine. The County set forth three categories of bargaining subjects:

Nonnegotiable—Discipline and discharge, performance evaluation, leaves of absence, bereavement pay, family leave, training and union leave, classification compensation, hiring, posting, promotion, transfer, career development, layoff and recall, and leaves of absence.[3]

Limited negotiability—Access to facilities, bulletin boards and health and safety with respect to the County, not Superior Court, facilities over which County had physical control.

Negotiable—Wages, overtime compensation, benefits, recognition, terms of MOA, dues deduction and bonding.

The County's position concerning wages and overtime was that any agreement would be subject to joint approval by the Board and a majority of the Superior Court judges.

During the negotiations Dan Kelley, labor relations specialist with the County's labor relations office, was the lead negotiator on behalf of the County. During the 10 bargaining sessions with Local 3300, Kelley represented the County, not the Superior Court. Pat Sweeten, the Superior Court's assistant executive officer, was an observer at the sessions but did not

---

[3]The record is unclear as to the County's position on the negotiability of grievance procedure, although it appears the County ultimately concluded this matter was in the nonnegotiable category.

participate in the negotiations. Kelley neither received nor solicited instructions from the Superior Court as to presentation of proposals and only consulted and communicated with Superior Court officials before and during the negotiations. Kelley explained that they were "charting new waters," and:

"We really needed to identify those areas over which the County clearly had jurisdiction and responsibility to meet and confer. And it's always been my understanding that the court has no obligation to meet and confer over these issues as a result of the change in MMB[A] and I was representing the County and our responsibility in our newly defined role under MMB[A].

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"I represented the County. And I had no authority to speak on behalf of the court. The court is not, as far as my understanding is, the courts aren't required to meet and confer. The County is under those areas where we have jurisdiction."

Late in the negotiations Local 3300 asked Presiding Judge Judith McConnell of the Superior Court to send a representative to bargain about noneconomic issues. The Superior Court declined to negotiate, explaining in part its position was that the enactment of section 3501.5 did not impact the rule that the Superior Court is not a public agency within MMBA, the section does not create rights or obligations for the Superior Court under MMBA or expand the County's authority over Superior Court employees, and "the [Superior] Court continues to exercise its power of determination in those areas in which it exercised such power prior to the enactment of Section 3501.5."

As a result of the negotiations, an MOA on wage and overtime compensation of Superior Court employees was agreed upon and ultimately approved by the Board and a majority of the judges of the Superior Court. On July 11, 1990, Local 3300 filed unfair labor practice charge No. 90-02 against the County pertaining to the noneconomic benefits with respect to which the County did not meet and confer. Article VII, section 1(c) of County's LRO provides:

"Section 1. UNFAIR LABOR PRACTICE. . . . It is an unfair labor practice for any representative of the:

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) County or a recognized employee organization to fail or refuse to meet and confer in good faith on wages, hours, and other terms and conditions of employment for represented employees."

In December 1990, the hearing officer conducted a hearing on the unfair labor practice charge. After considering and rejecting the County's exceptions to his February 1991 proposed decision, the hearing officer filed his decision in May 1991. In ruling the County violated LRO article VII, section 1(c), the hearing officer relied primarily on section 3501.5, stating in part:

"To conclude, as argued by the County, that Superior Court employees have only limited rights to meet and confer regarding economic matters, as distinguished from the undisputed right of County employees generally to negotiate regarding all matters within the MMBA's scope of representation, would in the Hearing Officer's view ignore the express and clear language of section 3501.5. In amending the MMBA to provide Superior Court employees 'shall be considered employees of the County for all matters within the scope of representation,' Superior Court employees were thereby clearly granted the right to meet and confer regarding 'all matters' within the scope of representation on the same basis as employees of the County.

"The County, however, contends the authority to establish non-economic terms of employment for Superior Court employees is vested exclusively in a majority of the judges of the Superior Court pursuant to section 69904(b). In answer to the County's argument in this regard, it is noted the joint approval requirements of section 69904(a) regarding rates of compensation for Superior Court personnel did not bar the parties from reaching agreement pursuant to the MMBA's meet and confer process on economic terms as set forth in the Memorandum of Agreement. The initial tentative agreement reached was ultimately ratified by joint action and approval of the Board of Supervisors and a majority of the judges of the Superior Court. Likewise, provisions of section 69904(b) requiring adoption by a majority of the judges of the Superior Court of various benefits described therein should not preclude the parties from meeting and conferring and ultimately reaching tentative agreement regarding non-economic terms and conditions of employment. Rather, the provisions of sections 3501.5 and 69904(b) should be read in harmony. Any tentative accord governing non-economic terms and conditions of employment for Superior Court employees is thus subject to the exclusive adoption of those non-economic terms by a majority of the judges of the Superior Court." (Fn. deleted.)

In December 1991, the Board conducted a hearing on the unfair labor practice charge. After hearing arguments from representatives of the County and Local 3300, three supervisors expressed their views. Supervisor Bailey stated in part, ". . . I certainly feel that we cannot be making decisions that cannot be final decisions when we are talking about expenditure of County and public money." Supervisor Bilbray expressed the view in part:

"[T]he problem is, I just have a problem with indicating that I'm going to sit down in good faith and negotiate a settlement that I have no authority at all to execute . . . if we build a consensus between the employees and the County Board of Supervisors, that consensus isn't worth the paper it's written on . . . the decision is in the hands of the Judges . . . ."

Supervisor Williams added in part, "[W]e have to have the authority to do those things for which we are responsible and accountable." The Board voted unanimously to reverse in whole the decision of the hearing officer.

The Superior Court is not a party to this proceeding.

### DISCUSSION

### I

█ Local 3300 asserts it is appropriate for this court to exercise its original jurisdiction in the first instance since the Superior Court has an interest in the outcome and its presiding judge, having declined to send a representative to the negotiations, has expressed a view on the merits of the dispute. Local 3300 cites article VI, section 10, of the California Constitution, rule 56(a)(1) of the California Rules of Court and the cases of *California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 580 [131 Cal.Rptr. 361, 551 P.2d 1193], and *Service Employees Internat. Union* v. *Superior Court* (1982) 137 Cal.App.3d 320, 322 [187 Cal.Rptr. 9] (*Service Employees I*). Citing the same authorities, the County states it does not object to this court exercising original jurisdiction. Considering the authorities cited and particularly the appellate court's exercise of original jurisdiction in the similar case of *Service Employees I, supra,* we deem it is proper to do likewise in this case.

### II

As outlined in *Service Employees I, supra,* 137 Cal.App.3d 320, 323, the MMBA governs labor relations of local government employees in California. MMBA requires "the governing body of a public agency," or its representatives, to meet and confer in good faith "regarding wages, hours, and other terms and conditions of employment" with representatives of recognized employee organizations. (§ 3505.) If agreement is reached by the representatives, they must jointly prepare a written memorandum of such understanding "which shall not be binding," and present it to the governing body or its statutory representative. (§ 3505.1.) █ Under decisional law, if the memorandum is accepted by the governing body, it is enforceable. (*Glendale*

*City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 337-338 [124 Cal.Rptr. 513, 540 P.2d 609].)

In *Sacramento County Employees Organization* v. *County of Sacramento* (1988) 201 Cal.App.3d 845, 853 [247 Cal.Rptr. 333], the last of three cases on the subject under consideration which were decided before the enactment of section 3501.5, the Court of Appeal points out:

"[T]he superior courts are not governmental subdivisions nor are they agencies of local government. (See § 3501, subd. (c).) Instead, they make up a part of the system of state courts and exercise the judicial power of the state. (Cal. Const., art. VI, §§ 1, 4-5.) . . . Superior Courts are not public agencies within the meaning of the MMBA."

The court concluded that the Legislature granted the Sacramento County Superior Court employees no right to bargain under the MMBA. (201 Cal.App.3d at p. 854.)

After the May 1988 decision in *Sacramento County Employees Organization, supra,* 201 Cal.App.3d 845, the Legislature enacted section 3501.5, effective September 16, 1988. Section 3501.5 reads:

"As used in this chapter, 'public employee' also means an employee of any superior court or an employee of any municipal court, except those employees whose job classification confers safety retirement status. *These* municipal and *superior court employees shall be considered employees of the county for all matters within the scope of representation.*

*"The county's established labor relations office shall represent the county in negotiations with any employee organization recognized to represent the* municipal court or *superior court employees.*" (Italics added.)

The Legislature stated a reason for enacting the provision to take effect immediately was "to clarify the rights of trial court personnel to collective bargaining under the Meyers-Milias-Brown Act . . . ." (Stats. 1988, ch. 945, § 17, p. 3025.)

■ In upholding the decision of the Board and denying the writ we find controlling guidance in the rules:

" 'The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. [Citations.] Thus, there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there

is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. [Citations.]' " (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 784 [160 Cal.Rptr. 102, 603 P.2d 19], quoting from *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54 [69 Cal.Rptr. 480].)

The assumption the Legislature is aware of existing law encompasses judicial construction of related statutes. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; *Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 93 [8 Cal.Rptr. 56], disapproved on another point in *Johnson & Johnson* v. *Superior Court* (1985) 38 Cal.3d 243, 255, fn. 7 [211 Cal.Rptr. 517, 695 P.2d 1058].) ■ We also follow the rule that every statute must be construed with reference to the whole system of which it is a part so that all may be harmonized and have effect. (*Stafford, supra,* 39 Cal.2d at p. 805; see also *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ Before section 3501.5 was enacted, the statutory law was that the Superior Court had exclusive control over noneconomic benefits of its employees. From January 1, 1975, to the present, section 69904, subdivision (b), has read in pertinent part:

"(b) All personnel appointed by the judges pursuant to this or any other section shall be exempt from civil service and shall be attaches of the court. They shall serve at the pleasure of a majority of the judges of the court and may at any time be removed by the majority of the judges in their discretion. In addition to the benefits authorized under Article 1 (commencing with Section 53200) of Chapter 2 of Title 5 and Sections 69902 and 69902.5 and *in accordance with personnel regulations adopted by a majority of the judges, such personnel shall be entitled to step advancement, vacation, sick leave, holiday benefits, other leaves of absence, and other benefits,* including participation in the county's tuition refund and suggestion award programs, at levels no less than those authorized for employees in the classified service of the county. . . ." (Italics added.)

During the same time, the statute has provided that the Board and a majority of the judges of the Superior Court have joint control over the wages and titles of the Superior Court employees. Section 69904, subdivision (a), provides:

"(a) In a county of the third class, as determined by the 1970 federal census, a majority of the judges of the superior court may establish, with the

approval of the board of supervisors, such additional titles and pay rates as are required and may appoint and employ, with the approval of the board of supervisors, such commissioners, officers, assistants and other employees as are deemed necessary for the performance of the duties and exercise of the power conferred by law upon the court and its members. Titles and rates of compensation of all such commissioners, officers, assistants and other employees may be adjusted from time to time by joint action and approval of the board of supervisors and a majority of the judges of the court."

As we have indicated, judicial construction of the MMBA at the time the Legislature enacted section 3501.5 established that superior courts are not public agencies within the meaning of the MMBA, that court personnel under the exclusive control of the court (through the executive officer or administrator of the court; see § 69898[4]) are employees of the court, not the county, and the Legislature has granted these employees no right to bargain under the MMBA. (*Sacramento County Employees Organization* v. *County of Sacramento, supra*, 201 Cal.App.3d 845, 852-854; *Service Employees Internat. Union* v. *Superior Court* (1984) 161 Cal.App.3d 1005, 1008 [208 Cal.Rptr. 48] (*Service Employees II*); *Service Employees I, supra*, 137 Cal.App.3d 320, 323-326.[5])

In enacting section 3501.5, the Legislature specifically granted court employees the right to bargain as if they were "employees of the county *for all matters within the scope of representation,*" and provided in this connection that the county's labor relations office "shall represent *the county* in negotiations." (Italics added.) The Legislature did not make the courts subject to the MMBA and it did not provide for a representative of the courts in any negotiations.

Read in light of the preexisting decisional and statutory law making it clear that superior courts are not local agencies subject to the MMBA, personnel subject to the exclusive control of the superior court are court

[4]The record has been augmented to include a 45-page set of Personnel Rules of the Superior Court adopted May 11, 1988, and revised July 26, 1990. The personnel rules provide for a court executive officer who oversees Superior Court personnel under the direction of the presiding judge. The personnel rules include detailed regulations on a wide range of matters dealing with Superior Court employees.

[5]It is apparent from the regulations in the Superior Court's personnel rules and from the provisions of section 69904, subdivision (b), making Superior Court employees exempt from civil service, attaches of the court and subject to service at the pleasure of a majority of the judges, that they stand in a position similar to the superior court employees involved in these cases. (See *Sacramento County Employees Organization, supra*, 201 Cal.App.3d at p. 852; *Service Employees II, supra*, 161 Cal.App.3d at p. 1008; *Service Employees I, supra*, 137 Cal.App.3d at p. 326.)

employees, not county employees, and a majority of the judges of the Superior Court has exclusive control over noneconomic benefits of such employees, the language referring to the county's labor office representing *the county*, not the courts, must be deemed to exclude any representation of the Superior Court. Since the county labor office does not represent the court, that office has no duty or authority to negotiate matters, such as the noneconomic benefits, that are within the exclusive domain of the court. In this regard, it is the rule under the MMBA "that a public agency is bound to so 'meet and confer' *only* in respect to '*any agreement that the public agency is authorized* [by law] *to make . . . .*' (*East Bay Mun. Employees Union* v. *County of Alameda*, 3 Cal.App.3d 578, 584 [83 Cal.Rptr. 503]; italics added.)" (*San Francisco Fire Fighters* v. *Board of Supervisors* (1979) 96 Cal.App.3d 538, 545 [158 Cal.Rptr. 145].) As a practical matter, it would be inappropriate to attribute to the Legislature a purpose of requiring the County to make very substantial negotiating expenditures on subjects over which the County has no authority to act. Nothing in the statutory language calls for this result. As in other areas of the law, the MMBA is not to be construed to require meaningless acts. (See *Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra,* 15 Cal.3d 328, 336.)

Moreover, the Superior Court is not obligated to meet and confer as to matters over which it has sole control since it is not a local agency subject to the MMBA. Any other construction of these provisions of section 3501.5 would effectively repeal by implication or render as surplusage the Superior Court's powers as set forth in section 69904, subdivision (b). This we are not permitted to do. (*Sacramento County Employees Organization* v. *County of Sacramento, supra,* 201 Cal.App.3d 845, 855-856.)

On the other hand, the county labor office's representation of *the county* with respect to matters over which the county has authority, such as its joint authority with a majority of the judges of the Superior Court over economic matters concerning Superior Court employees, is fully appropriate under the language of section 3501.5.

We recognize that this construction of section 3501.5 in harmony with related law leads to a conclusion different from that which might be drawn by reading only section 3501.5, and particularly its reference to "*all* matters within the scope of representation," (italics added) in combination with section 3504's broad definition of "scope of representation."[6] Section 3504 includes within the scope of representation "all matters relating to employment conditions and employer-employee relations, including, but not limited

---

[6]Although Local 3300 makes additional analysis and argument, this approach to construction of the statute appears to constitute the main thrust of Local 3300's position. Local 3300

to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order." However, as we have seen, the broad language of section 3504 defining the scope of representation is limited to those labor-management agreements under the MMBA that the public agency is authorized to make. (*San Francisco Fire Fighters* v. *Board of Supervisors, supra*, 96 Cal.App.3d 538, 545.) Since the scope of representation is so limited and the County is not authorized to make agreements as to noneconomic benefits of Superior Court employees, "all matters within the scope of representation" in section 3501.5 must be construed to exclude the matter of the noneconomic benefits.

We add that the rule limiting the "scope of representation" to agreements the public agency is authorized to make renders invalid Local 3300's suggestion that there is no impediment in the MMBA to the representative of the county negotiating both noneconomic and economic issues pursuant to section 3501.5, followed by ratification of the noneconomic issues by the Superior Court and joint ratification of the economic issues by the Board and the Superior Court. Also, contrary to Local 3300's suggestion, the fact that an MOA is nonbinding under section 3505.1[7] has no bearing on the rule the negotiations must concern matters on which the public agency has authority to agree.

In summary, we conclude:

(A)  After the enactment of section 3501.5, the Superior Court remains outside the application of the MMBA because it is not a public agency within the meaning of the MMBA.

(B)  Section 3501.5 confers bargaining rights on Superior Court employees concerning all matters within the scope of representation, which only includes matters the County has authority to agree upon, i.e., economic benefits within subdivision (a) of section 69904, but excludes matters the County does not have authority to agree upon, i.e., noneconomic benefits within subdivision (b) of section 69904.

---

tells us, "It is scarcely necessary to look beyond the text of the MMBA to decide this case," immediately thereafter quoting sections 3501.5 and 3504.

[7]Section 3505.1 provides: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a written memorandum of such understanding, which shall not be binding, and present it to the governing body or its statutory representative for determination."

(C)   Under section 3501.5, the County's labor relations office represents the County in negotiations about all matters within the scope of representation, as we have defined it.

(D)   Under section 3501.5, the Superior Court employees are considered employees of the County for purposes of such negotiations. For any other purposes connected with the MMBA, the Superior Court employees are employees of the Superior Court, not the County.

The Board properly reversed the decision of the hearing officer.

DISPOSITION

Petition denied.

Kremer, P. J., and Work, J., concurred.

Petitioner's application for review by the Supreme Court was denied February 18, 1993.