Filed 2/5/15  Vaca v. Lewenfus CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANA VACA et al., | B249885 |
| Plaintiffs and Appellants, | (Los Angeles County |
| v. | Super. Ct. No. BC479045) |
| SHELDON LEWENFUS, | |
| Defendant and Respondent. | |

APPEAL from a judgment (order) of the Superior Court of Los Angeles County, Debre K. Weintraub, Judge.  Reversed.

Law Office of Nick A. Alden, Nick A. Alden and Aleksey Sirotin for Plaintiffs and Appellants.

Neufeld Marks, Timothy L. Neufeld and Yuriko M. Shikai for Defendant and Respondent.

_____

Appellant Ana Vaca sued her former attorney, Neil M. Howard, and his alleged agent, employee, and co-conspirator, respondent Sheldon Lewenfus, for damages caused by the alleged wrongful taking of her property. Lewenfus moved to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court granted the motion and awarded Lewenfus his attorney fees. This appeal followed.

The complaint's allegations are as follows: In furtherance of an alleged conspiracy with Lewenfus, Howard obtained a court order authorizing a sheriff's sale of appellant's residence on behalf of his client, a judgment creditor. At the sheriff's sale, Howard did not make a credit bid on behalf of the judgment creditor—thus leaving his judgment unpaid—and Lewenfus, the sole bidder, purchased appellant's residence at a grossly inadequate price. Howard and Lewenfus obtained the property at the expense of appellant and the judgment creditor, both former clients of Howard.

We conclude the gravamen of the complaint—which targets the alleged fraudulent suppression of bids at a court-authorized sale—does not arise from protected activity, even though it occurred against the backdrop of protected petitioning activity. The judgment (order) is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

As will be discussed, Howard played a significant role in several prior lawsuits in which appellant (Ana) was a party. Howard represented Ana and her brother Enrique[2] as plaintiffs in a prior wrongful death action, in which he negotiated a settlement in their favor (No. GC040014). After Ana invested a large portion of the settlement proceeds in her family residence, Howard sued Ana on behalf of Enrique, who obtained a judgment

---

[1] SLAPP is an acronym for Strategic Lawsuit Against Public Participation. All further statutory references are to the Code of Civil Procedure unless stated otherwise.

[2] We refer to Ana Vaca and her brother, Enrique Vaca, who have the same last name, and to their sister Laura Garcia, by their first names. No disrespect is intended. Throughout this opinion, all references to Ana are intended to include her husband, plaintiff and appellant German Valera, except where the context demonstrates that the references are to Ana alone.

2

against Ana for misappropriating the wrongful death settlement proceeds (No.GC041483). Ana then sued Howard for fraud, and that action is pending on appeal (No. BC436404).

Ana filed the present action (No. BC479045) against Howard and Lewenfus after her family residence was sold in a sheriff's sale. The sale was conducted pursuant to an order for sale that Howard had obtained on behalf of Enrique as Ana's judgment creditor in the misappropriation action (No. GC041483). Ana contends that in advance of the sale, Howard arranged to have Lewenfus purchase her home for the grossly inadequate price of $10,000.00. Howard allegedly conspired with Lewenfus to acquire Ana's property for a fraction of its fair market value by suppressing all other bids, and, in particular, by failing to make a credit bid on behalf of Enrique, whose judgment against Ana for $158,565.89 would have easily trumped the $10,000.00 bid by Lewenfus. Ana claims the fraudulent sale to Lewenfus resulted in the loss of her family residence for a fraction of its fair market value, and left her judgment to Enrique unpaid.

A. *Prior Wrongful Death Action*

In 2007, Howard filed an action on behalf of Ana and Enrique against the Pasadena Hospital Association for the wrongful death of their mother, who had 12 children. (*Vaca v. Pasadena Hospital Association* (Super. Ct. L.A. County No.GC040014) (wrongful death action).) Ana and Enrique are California residents, as is their sister Laura; their other nine siblings live in Mexico. After Howard settled the wrongful death action for $1.275 million, he issued two checks to Ana and instructed her to settle with her 11 siblings. One of the checks was for $718,931.67 and the other for $167,291.85. The aggregate amount was $886,223.52.

Ana distributed $140,000.00 of the wrongful death settlement proceeds to Enrique, and $50,000.00 to Laura. Ana invested most if not all of the remaining settlement proceeds in her family residence, which she allegedly purchased with cash.

3

## B. Prior Misappropriation Action

A dispute arose between Ana and Enrique with respect to the distribution of the wrongful death settlement proceeds. Howard represented Enrique in an underlying lawsuit against Ana for misappropriation of those proceeds. (*Vaca v. Vaca* (Super. Ct. L.A. County No. GC041483) (misappropriation action).)

Howard originally filed the misappropriation action on behalf of Ana's 11 siblings. The nine siblings in Mexico dismissed their claims against Ana before trial. Laura, who denied retaining Howard as her attorney, represented herself at trial.

Enrique, represented by Howard, sought to apportion the $718,931.67 wrongful death settlement check that Ana had received from Howard with instructions to settle with her siblings. Subject to offsets for Ana's prior payments of $140,000.00 to Enrique and $50,0000.00 to Laura, Enrique and Laura each claimed roughly one-third of the settlement check. Howard represented to the court that Enrique's share of the settlement check was $237,643.89, and Laura's was $242,543.89.

Ana, acting without an attorney, was precluded by a discovery sanction from presenting any testimony at trial. (According to her appellate counsel, Ana does not read or write Spanish, her native language, and does not understand English.)

The trial court apportioned $237,643.89 of the settlement check to Enrique, and after an offset of $140,000.00, granted a net award of $97,643.89. In addition, Enrique received $9,309.00 in prejudgment interest, $50,000.00 in punitive damages, and $1,613.00 in costs, for a total judgment of $158,565.89.

The trial court apportioned $242,543.89 of the settlement check to Laura, and after an offset of $50,000.00, granted a net award of $192,543.89. In addition, Laura received $18,357.00 in prejudgment interest, $25,000.00 in punitive damages, and $530.00 in costs, for a total judgment of $236,530.89.

## C. Prior Fraud Action

Ana sued Enrique, Laura, Howard, and Howard's associates, Aldo Flores and Oscar Valencia, for fraud. (*Vaca v. Howard* (Super. Ct. L.A. County No. BC436404 (prior fraud action).) In that action, which is pending on appeal, the trial court (Judge

4

Conrad Aragon) denied Howard's special motion to strike Ana's complaint, and notified the State Bar of Howard's representation of clients (Enrique and Ana) with adverse interests as a possible violation of the Rules of Professional Conduct.

### D. Execution Sale of Ana's Residence

In order to enforce Enrique's judgment against Ana in the misappropriation action (No. GC041483), Howard sought an order for sale of Ana's residence. In an accompanying declaration, Howard stated that Ana's residence had a fair market value of $400,000.00. In his April 2, 2010 declaration in support of an order to show cause concerning sale of the residence (OSC), Howard stated, based on information provided by Enrique, that the residence was occupied by Ana, her husband, and her two sons, and that the statutory homestead exemption available to Ana was $100,000.00. (§ 704.760, subd. (b).)[3]

At the OSC hearing, the trial court (Judge Mary Thornton House) relied on Howard's April 2, 2010 declaration to determine that the statutory homestead exemption available to Ana was $100,000.00 (§ 704.730, subd. (a)(2)),[4] and the fair market value of

---

[3] A judgment creditor's application for an order for sale must include a sworn statement, which may be based on information and belief, as to whether the dwelling is a homestead and the amount of the homestead exemption, if any, that applies. (§ 704.760, subd. (b).)

A "dwelling" means the place where a person resides. (§ 704.710, subd. (a).) The term "homestead" means the "principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." (§ 704.710, subd. (c).)

[4] Section 704.730 provides in relevant part that the homestead exemption of $100,000.00 applies if the "judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit, and there is at least one member of the family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor." (§ 704.730, subd. (a)(2).) A "family unit" can include the judgment debtor and the judgment debtor's spouse, if the spouses reside

the home was $400,000.00.  The court issued an order on June 18, 2010, authorizing a sheriff's sale of Ana's property subject to three requirements.  First, any bid must exceed $100,000.00 (the amount of the statutory homestead exemption available to Ana), plus the aggregate amount of all liens and encumbrances on the property.  Second, any bid must equal or exceed 90 percent of the appraised fair market value of $400,000.00, thus establishing a minimum bid requirement of $360,000.00.  Third, the sale proceeds were to be applied first to the satisfaction of Enrique's judgment, plus costs and interest; then to the satisfaction of Laura's judgment, plus costs and interest; then to the bond surety company in the amount of $100,000.00; and then to Ana.  As we shall discuss, this order was superseded by a later and different order.

In November 2010, Lewenfus purchased Ana's residence at a sheriff's sale.  His successful bid of $10,000.00 was the only bid received at the sale.

### E.     Other Prior Actions

After the property was purchased by Lewenfus for $10,000.00, Ana refused to vacate the home and filed a bankruptcy petition.  Lewenfus initiated an unlawful detainer action and obtained a judgment against Ana in December 2010.  The bankruptcy court granted Lewenfus's motion for relief from the automatic stay in February 2011.  In February or March 2011, Ana and Lewenfus signed a settlement agreement, but the validity of that agreement is disputed.

In February 2011, Ana's new attorney, Nick A. Alden, recorded a lis pendens against the disputed residence, erroneously stating that Lewenfus was a defendant in the prior fraud action that Ana had filed against Howard (No. BC436404).  Because he was not a party to that action, Lewenfus sought leave to intervene in order to expunge the lis pendens.  The lis pendens was expunged in March 2012.

Ana also filed a lawsuit against Howard and Lewenfus in June 2011 (No. SC112953).  That lawsuit was dismissed in November or December 2011 for failure to prosecute.

---

together in the homestead, or the judgment debtor and a minor child.  (§ 704.710, subds. (b)(1), (b)(2)(A).)

F.     *Present Action Against Howard and Lewenfus*

Ana filed the present action against Howard and Lewenfus in February 2012 (No. BC479045).[5]  In addition to seeking to set aside the sheriff's sale of her home to Lewenfus (eighth cause of action), the operative first amended complaint contained causes of action for:  (1) conversion of Ana's residence (first cause of action); (2) abuse of process in connection with the sheriff's sale (second cause of action); (3) conspiracy to defraud (third cause of action); (4) conspiracy to convert (fourth cause of action); (5) quiet title (fifth cause of action); (6) wrongful eviction (sixth cause of action); and (7) wrongful foreclosure (seventh cause of action).

According to the allegations of that complaint, after Howard learned that Enrique was unwilling to proceed with the forced sale of Ana's residence, Howard conspired with Lewenfus to obtain Ana's home through a fraudulent sheriff's sale.  The following allegations also were made in that pleading:  Howard obtained the June 18, 2010 order for sale of Ana's home without informing the court (Judge House) that Enrique, the judgment creditor, was unwilling to proceed with the sale;  Ana's home, which she owned free and clear, was worth about $500,000.00;  Howard fraudulently caused the sheriff to seize Ana's dwelling and sell it to Lewenfus for $10,000.00, which was about $490,000.00 below its fair market value;  and Howard "double crossed" Enrique by failing to make a credit bid that would satisfy his judgment against Ana.  As a result of the fraudulent sheriff's sale, Ana lost her property and Enrique's judgment remained unsatisfied.

Lewenfus moved to strike Ana's complaint under the anti-SLAPP statute.  He argued the causes of action arose from Howard's protected petitioning activities, and were subject to the litigation privilege.

---

[5] Neither Howard nor the Los Angeles County Sheriff's Department (which was added as an additional defendant in this action) is a party to this appeal.
     According to attorney Alden's declaration of August 17, 2012, the trial court denied Ana's request to consolidate her prior fraud action against Howard (No. BC436404, which is pending on appeal) with this action (No. BC479045).

7

In opposition, Ana argued that the gravamen of her complaint targeted a conspiracy by her former attorney, Howard, by which Lewenfus acquired her home through a fraudulent sheriff's sale, which is not a protected activity. She also argued that where, as here, a sheriff's sale involves both unfairness and an inadequate price, the court may set aside the fraudulent sale.

The trial court (Judge Debre Weintraub) granted the special motion to strike the complaint against Lewenfus. It found that because the claims arose from Howard's protected speech or petitioning activities, the first prong of the anti-SLAPP statute was satisfied. As to the second prong—probability of success—the trial court concluded that although Lewenfus did not meet the order of sale's minimum bid requirement—it was undisputed that the $10,000.00 purchase price fell short of Judge House's minimum bid requirement of $360,000.00—Ana produced no evidence of wrongful or dishonest conduct on the part of Lewenfus. The court stated that on this record, it was possible that Lewenfus simply made a "fortunate" purchase.

The trial court struck the complaint as to Lewenfus and awarded him attorney fees of $23,961.00. Ana timely appealed.[6]

G.      *Oral Argument*

By letter dated September 30, 2014, we invited the parties to discuss the following issues at oral argument:

1. Did the sheriff's sale satisfy the conditions of the June 18, 2010 order authorizing a sheriff's sale of dwelling, and section 704.800?

2. If not, is the sale nevertheless valid, or is it void or voidable?

3. If the sale is void or voidable, does that affect the second prong of the anti-SLAPP analysis—probability of success—as to the cause of action to set aside the sheriff's sale and other causes of action?

In his written response, Lewenfus informed us, for the first time, of a September 9, 2010 order for sale that was entered by the trial court in the underlying misappropriation

---

[6] The order is appealable. (§§ 425.16, subd. (i); 904.1, subd. (a)(13).)

8

action (No. GC041483). The new order for sale *eliminated* the $100,000.00 statutory homestead exemption and 90 percent of the appraised fair market value minimum bid requirement of the June 18, 2010 order for sale.[7] Lewenfus argued that under the new order for sale, his purchase of the property for $10,000.00 was valid and could not be set aside under the limited exception provided in section 701.680, which applies only where the property is purchased by the judgment creditor (Enrique).

In her written response, Ana does not mention the September 9, 2010 order for sale. Instead, she argues the sale to Lewenfus was invalid because it did not meet the $360,000.00 minimum bid requirement set forth in the (superseded) June 18, 2010 order for sale.

We informed the parties at oral argument that we would request additional briefing, and the matter would not be submitted until a future date. After oral argument, we obtained the superior court file in the misappropriation action (No. GC041483), primarily to ascertain what had led to the issuance of the new order of sale. (See Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a) [reviewing court may take judicial notice of records of any court of this state]; 1 Witkin, Cal. Evidence (5th ed. 2012) Judicial Notice, § 48, p. 177.) After examining the file, we advised the parties of our discovery of two additional relevant documents: Enrique Vaca's ex parte application for an order "correcting" the order of sale, and Howard's supporting declaration of September 5, 2010.

Howard's September 5, 2010 declaration stated that because there was no recorded homestead exemption, Ana had the burden of showing that the residence qualified as a homestead. The declaration also stated that Ana had failed to satisfy her burden of proof, and "[c]onsequently, the order of June 18, 2010 appropriately provided that the subject property is *not* subject to any homestead exemption." (Italics added.)

Howard's statement—that the original order of sale "appropriately provided that the subject property is *not* subject to any homestead exemption" (italics added)—

---

[7] We granted the request by Lewenfus to take judicial notice of the September 9, 2010 corrected order for sale.

9

misrepresented the fact that the court had imposed a statutory homestead exemption of $100,000.00, based on Howard's April 2, 2010 declaration. In his April 2 declaration, which was filed in compliance with the requirements of section 704.760, Howard stated that the dwelling was occupied by Ana, her husband, and her two sons, and that the available homestead exemption was $100,000.00.

We invited the parties to address the relevance of these additional materials.

*H.     Supplemental Briefing*

In her supplemental brief, Ana argued that since Howard's April 2, 2010 declaration had established the necessary factual basis to impose a statutory homestead exemption of $100,000.00, no further evidence was required from her on that point. She contended that because the trial court had been misled by Howard's September 5, 2010 declaration (which erroneously stated that no homestead exemption had been imposed in the June 18, 2010 order for sale), it had mistakenly eliminated the homestead exemption from its September 9, 2010 new order for sale.[8] Ana argued that the sale was void.

In his supplemental brief, Lewenfus argued that Howard's September 5, 2010 declaration did not mislead the trial court to omit the homestead exemption from the new order for sale. He pointed out that the trial court was not precluded from referring to Howard's prior declaration of April 2, 2010, which was in the superior court file. He also argued that Ana could have challenged elimination of the homestead exemption, opposed Howard's ex parte request to correct the order for sale, presented evidence to establish the existence of a homestead exemption, sought reconsideration of the corrected order for sale, or appealed from the corrected order for sale. Lewenfus asserted that because the litigation privilege applies to all of Howard's statements in the underlying

---

[8] Ana has asked that we take judicial notice of documents that were recently obtained from the sheriff's department. She contended the documents were relevant to show that Howard and Lewenfus had conspired to steal her property in breach of Howard's fiduciary duty to Ana and Enrique. Because the documents were not provided to the trial court, we deny the request for judicial notice.

10

misappropriation action, including Howard's postjudgment enforcement activities, Ana is incapable of demonstrating a probability of prevailing on the merits of her complaint.[9]

## DISCUSSION

A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. (*Castillo v. Pacheco* (2007) 150 Cal.App.4th 242, 248.)  The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights.  (§ 425.16, subd. (a).)

A claim is subject to a special motion to strike if the defendant shows that it arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing on the merits.  (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  In determining the plaintiff's probability of success, the court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor.  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714.)  The court must consider not only facts supported by direct evidence, but also facts reasonably inferable from the evidence. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 822.)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  On appeal, we independently review both of these determinations. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345–1346.)

In considering whether a complaint arises from protected activity, "we disregard the labeling of the claim (*Ramona Unified School Dist. v. Tsiknas* (2005) 135

---

[9] Lewenfus has asked that we take judicial notice of the recent sale of Ana's residence to a third party.  Because those documents were not presented to the trial court, the request is denied.

11

Cal.App.4th 510, 522) and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion. (*Ramona Unified School Dist.*, at pp. 519–522.) We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189.)" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only "to determine what conduct is actually being challenged, not to determine whether the conduct is actionable. [Citation.]" (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389.)

In this case, the allegation that Howard and Lewenfus conspired to suppress all other bids at the sheriff's sale of Ana's residence, thus enabling Lewenfus to acquire Ana's residence at a grossly inadequate price, serves as the foundation for each cause of action in the operative complaint. Although the titles of some causes of action—such as conversion, conspiracy to convert—may not apply to the fraudulent taking of real property, the allegations are sufficient to allege a theory of misappropriation.

In *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 677, the court held that bidding on property at a court ordered sale "is a purely business type event or transaction" and is not a protected activity. Although the sheriff's sale of Ana's residence was preceded by protected petitioning activities—Howard's petitioning for issuance of the court orders necessary for the sale—the gravamen of the complaint attacks the fraudulent suppression of bids, particularly by the judgment creditor, in order to facilitate the pre-arranged sale to Lewenfus for an inadequate price. We conclude that the conduct at issue, the fraudulent suppression of bids at a sheriff's sale, does not arise from protected petitioning activities.

We note that the allegations, if proven, could raise questions concerning a possible breach of Howard's fiduciary duty of loyalty to former clients, Ana and Enrique. (See *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189

12

[breach of fiduciary duty is not a protected activity]; *Oasis West Realty*, *LLC v. Goldman*, *supra*, 51 Cal.4th at p. 821 [attorney's fiduciary duty of loyalty to former clients remains in force even after the representation ends].) However, we express no opinion as to the viability of those possible claims.

In light of our determination that the complaint does not arise from protected activity, the judgment (order) granting the special motion to strike and awarding fees must be reversed.

## DISPOSITION

The judgment (order) is reversed. Appellants are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

COLLINS, J.

13